# Chilton Warehouse & Manufacturing Co. *v.* Lewis.

## *Assumpsit.*

(Decided Dec. 21, 1911.  57 South. 100.)

1. *Bills and Notes; Prima Facie Case.*—When a plaintiff introduces in evidence a note corresponding with that described in the complaint, and executed by the defendant, he makes out a prima facie case entitling him to recover the face value of the note with interest thereon, and reasonable attorney's fees stipulated therein.

2. *Agriculture; Fertilizer; Note for; Defenses.*—Under sections 37 and 43, Code 1907, where two tests were made, one showing 11% below the guaranteed value, and the other test made from sacks sold a consumer showed 2½% below guaranteed commercial value, the deficiency in the fertilizer sold could not be determined or ascertained by averaging the result of the two tests.

APPEAL from Elmore Circuit Court.

Heard before Hon. W. W. PEARSON.

Assumpsit by the Chilton Warehouse and Manufacturing Company against J. C. Lewis. Judgment for defendant and plaintiff appeals. Reversed and remanded.

FRANK W. LULL, for appellant. The question presented involves a construction of sections of the Code relating to the sale of fertilizers.—Secs. 37 to 48 especially. Two tests were made, one test while in the

[Chilton Warehouse & Manufacturing Co. v. Lewis.]

warehouse showing 11% below commercial value, and one test from sacks sold a consumer showing a 2½% below commercial value, but it nowhere is shown that defendant had the test made, or was concerned in the making of the test. It is therefore insisted that the defendant made no case, and that the court was in error in instructing that an average of the two tests should determine the per cent. below commercial value of the fertilizer.

J. M. HOLLEY, for appellee. Counsel discusses the sections of the Code referred to by appellant in his brief, and insists that there was no error in the ruling of the trial court.

DE GRAFFENRIED, J.—This suit was brought by the appellant against the appellee on a certain promissory note made by the appellee to appellant for certain commercial fertilizers sold by appellant to appellee.

When the appellant introduced the defendant's note in evidence, it made out a prima facie right to recover the face of the note, interest, and, upon proof of their value, its attorney's fees, for the payment of which by the appellee the note provided. If there existed any good and sufficient reason why the appellant should not recover, the law cast the duty upon the defendant to show such reason by legal evidence. The appellee claimed that he should not be required to pay the price he had agreed to pay for the fertilizer, but should be required to pay only one-half of that amount, because, according to his contention, the fertilizer sold him was deficient in some of its ingredients, as guaranteed or branded on the sacks, and that, by reason of such deficiency, the commercial value

30 CA

of the fertilizer sold him fell more than 5 per cent. below the garanteed total commercial value of the fertilizer so sold to him. Section 37 of the Code of 1907 provides that when such deficiency occurs and amounts to more than 5 per cent. of the guaranteed commercial value of such fertilizer any note or obligation given in payment therefor shall be collectible by law only for one-half of the amount of such note or obligation.

Section 44 of the Code provides the method whereby any purchaser of fertilizer or fertilizer material may obtain, through the officials of the state, and at the state's expense, a complete analysis of the particular lot of fertilizer obtained by him; and it is provided in this section that "such official analysis shall be admissible as evidence in any of the courts of the state on the trial of any issue involving the *merits of the particular lot of fertilizer* or fertilizer material so sampled and analyzed."

While the analysis provided for in the above section 44, when introduced in evidence on the trial of a cause involving the merits of the particular lot of fertilizer so analyzed, is not made conclusive evidence of its correctness, nevertheless, as the analysis is made by trained and impartial officials of the state, such evidence, when introduced on the trial of a cause, would naturally carry with it much probative force. The appellant did not take advantage of section 44 and have his fertilizer analyzed; and he undertook to show that the fertilizer sold to him by appellant fell more than 5 per cent. below its commercial value, as shown by the brands on the sacks containing it, in the following manner: He introduced the record of the official analysis made of the fertilizer manufactured by appellant, as provided in section 434 of the Code. This record

shows that the Agricultural Department caused two lots of the brand of fertilizer bought by appellee from appellant to be analyzed under the requirements of and in accordance with the provisions of said section 43. The analysis of one lot, made from samples taken from sacks in the warehouse of appellant, showed a commercial value of $17.00, which was 11 *per cent.* below the guaranteed commercial analysis, and the other analysis made from samples taken from sacks in the hands of a *farmer or consumer,* showed a commercial value of $18.78, which was 2½ *per cent.* below the guaranteed value. In other words, the official analysis, as shown by the records of the Department of Agriculture, showed that one lot of the brand of fertilizer which the appellee bought from appellant fell *below* the 5 per cent. standard, and that the other lot went *above* the 5 per cent. standard. The two lots were analyzed in the early part of the year, and as each analysis was made by the Department of Agriculture, under the provisions of section 43 of the Code, both possessed equal dignity, and both possessed equal probative force. As the burden was on the defendant to show that the fertilizer that he bought from appellant was more than 5 per cent. *below* its guaranteed commercial value, it is evident that the above evidence was insufficient to meet the requirements of such a defense. To meet this situation, the appellee was permitted, against the objection of appellant, to ask a witness the following question: "What would be the average of the two tests in the matter of percentage and in the difference between test No. 231e and test No. 298h; that is, the average between 2½ per cent. and 11 per cent. " The witness was permitted to answer, "Something over 6 per cent."

The fact that the appellant had fertilizer which was 11 per cent. below its guaranteed analysis and other

fertilizer which fell 2½ per cent. below the same guaranteed analysis was no evidence that it ever had a sack of fertilizer which fell 6¼ per cent.—"something over 6 per cent.," to use the language of the witness—below the guaranteed analysis. If a wine merchant had sold a customer some wine, representing it to be 10 years old, would it be held proper, in a suit involving the age of the wine, because the evidence showed that the wine merchant had two sorts of wine, one sort 10 years old and the other 4 years old, to permit a witness to swear that the "average" between 10 years and 4 years is 7 years? Would the jury be authorized to infer, in the absence of all proof as to the true age of the wine in controversy, that the two wines had been mixed together, and that the wine in controversy was 7 years old? Under the case supposed, would a court permit such a special finding of a jury to stand?

"A verdict is not a true verdict, the result of any arbitrary rule, or order, whether imposed by themselves, or by the court or officer in charge."—*Southern Railway Co. v. Williams*, 113 Ala. 620, 21 South. 328.

There was *no* evidence in this case tending, in the remotest degree, to show that the lot of fertilizer from which analysis described in the above qestion "test No. 231e" and the lot from which analysis described as "test No. 298h" were ever mixed together, and, if so mixed, in what proportions, and the court was clearly in error in permitting the question to be asked the witness, and also in permitting the witness to answer the same.

It follows from what we have above said that this cause, for the error pointed out, must be reversed and remanded. It also follows that, in our opinion, under the evidence as it exists in the bill of exceptions, the appellee failed to sustain his plea of tender.

Reversed and remanded.