(110 So. 5)

PEARSON v. CENTRAL OF GEORGIA RY. CO. (5 Div. 936.)

(Supreme Court of Alabama. June 17, 1926. Rehearing Denied Nov. 11, 1926.)

1. Eminent domain ⬤196.

Evidence of necessity *held* to warrant condemnation of land in excess of 100 feet in width for railroad right of way, under Code 1923, §§ 7016, 7018, 7204.

2. Evidence ⬤552—Where there was evidence of facts substantially as embraced in hypothetical questions, it was not error to allow competent expert witnesses to answer hypothetical questions.

Where there was evidence before court to show facts substantially as embraced in hypothetical questions, and civil engineers were competent as experts, it was not error to permit them to answer hypothetical questions as to different widths of right of way necessary for construction of railroad base for fills of different widths on land in question in condemnation proceeding.

3. Eminent domain ⬤196—In condemnation proceeding to secure railroad right of way, admission of evidence that railroad planned to use certain land to erect overhead bridges at public road crossings held not error (Code 1923, §§ 6754, 7018, 7027).

In condemnation proceeding to secure railroad right of way, admission of testimony of resident engineer that railroad's plan was to use certain land to erect overhead bridges over its track at crossings of two public roadways *held* not error, in view of Code 1923, §§ 6754, 7018, 7027.

4. Eminent domain ⬤93—Damages that might arise in future from railroad's building fill and sewerage over creek held not recoverable in condemnation proceeding.

Where railroad built fill and sewerage at level with bottom of creek running through defendant's land, defendant could not, in condemnation proceeding, recover for damages that might result if defendant decided to drain land by making creek deeper, since damages were not sufficiently direct and certain.

Appeal from Circuit Court, Tallapoosa County; S. L. Brewer, Judge.

Condemnation proceeding by the Central of Georgia Railway Company against C. L. Pearson. The probate court condemned the land, and the commissioners assessed the damages, from which decrees defendant appealed to the circuit court, which granted the application for the condemnation, and a jury assessed the damages. From the judgment, defendant appeals. Affirmed.

Jas. W. Strother and Geo. C. Douville, both of Dadeville, for appellant.

It was error to permit appellee's engineer witness to testify as to the necessity of a strip 150 feet wide for appellee's purposes, it not being shown that witness had any knowledge of the premises, or qualification to testify as to the matter inquired about. Ala. Power Co. v. Carden, 189 Ala. 384, 66 So. 596. Statutes delegating power of eminent domain must be strictly construed in favor of the property owner, and the taking of lands not necessary for the public use is forbidden. Ensign Yellow Pine Co. v. Hohenberg, 200 Ala. 149, 75 So. 897; Const. 1901, §§ 23, 235. Evidence of the purpose of appellee to build overhead bridges at road cross-

----

⬤For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ings was incompetent. Code 1923, § 6754. Appellant was entitled to show damage to his 60 acres of bottom land. Const. 1901, § 7; Eaton v. B. C. & M. R. Co., 51 N. H. 504, 12 Am. Rep. 147.

Barnes & Walker, of Opelika, for appellee.

The question of petitioner's right to condemn is to be determined by the court; the amount of damages to be assessed is a question for the jury. M. & B. R. Co. v. L. & N. R. Co., 192 Ala. 136, 68 So. 905; Dean v. County Board, 210 Ala. 256, 97 So. 741; Stout v. Limestone County, 211 Ala. 227, 100 So. 352. The necessity for the specific land does not enter into the evidence, but is determined by the court as a legal question, on the right of condemnation presented by the pleadings. Dean v. County Board, supra. The selection of the land and the amount to be taken usually rests in the discretion of the condemning company, within statutory and constitutional limits. 2 Elliott on Railroads, 693, 755, 766; 20 C. J. 634; Zircle v. Southern R. Co., 102 Va. 17, 45 S. E. 802, 102 Am. St. Rep. 805. A civil engineer may, where the inquiry is relevant, state an inference or judgment as to matters within the range of his knowledge or experience. 22 C. J. 657. The court did not err in allowing petitioner to show its plans with reference to roads crossed by its relocated line. State v. L. & N., 158 Ala. 208, 48 So. 391; Code 1923, § 7027. Anticipated conditions are not elements of damage. Stout v. Limestone County, 211 Ala. 227, 100 So. 352; 20 C. J. 764, 778; K. & T. R. Co. v. N. W. Coal & M. Co., 161 Mo. 288, 61 S. W. 684, 51 L. R. A. 936, 84 Am. St. Rep. 717; In re William, 19 Wend. (N. Y.) 698; Ala. Power Co. v. Keystone Lime Co., 191 Ala. 58, 67 So. 833, Ann. Cas. 1917C, 878; 2 Elliott on Railroads, 837; Highbridge L. Co. v. U. S., 69 F. 320, 16 C. C. A. 460; Meharg v. Ala. Power Co., 201 Ala. 555, 78 So. 909.

MILLER, J. This is a condemnation proceeding by the Central of Georgia Railway Company, a corporation, against C. L. Pearson, seeking to condemn 85.07 acres of his land, being a strip varying in width from 100 to 250 feet, for a distance of 5.51 miles through the body of his land in Tallapoosa county. This strip is desired, and alleged by petition under oath to be necessary, for its railroad purposes, permitted by the statute. Sections 7016, 7018, and 7204, Code of 1923. There were two original applications filed; one was amended, and by agreement of the parties the two proceedings were joined and tried as one in the circuit court. This strip of land described in the applications was condemned for the purposes mentioned by the probate court, and commissioners assessed the damages, and from these decrees the defendant, Pearson, appealed to the circuit court.

The defendant admitted and agreed in open court that the petitioner is entitled to an order granting its application as amended as against the said C. L. Pearson, and as to the lands of the said C. L. Pearson, described in said application as amended, except as to the lands described therein as being in excess of 100 feet in width and as to the lands therein as being condemned for "borrow pits"; and issue was joined as to whether the said railroad company is entitled to an order of condemnation as to said lands described in said application as being in excess of 100 feet in width and described as being condemned for borrow pits.

The court by decree on the evidence granted the application as amended for the condemnation of the lands of the defendant as described therein. Thereupon a jury was duly selected and sworn to assess the damages and compensation, and on the evidence they returned a verdict fixing the same at $6,375 in favor of the defendant, and from a judgment therefor against the petitioner this appeal is prosecuted by the defendant.

The appellant insists the court erred in condemning the lands described in the applications, in excess of 100 feet in width, and the land for borrow pits, because there was no evidence tending to show a necessity for it for the purposes mentioned. The statute (section 7018, Code of 1923) provides:

"Railroad companies may by condemnation acquire real estate for ways and rights of way, not exceeding one hundred feet in width throughout the entire length of its lines, * * * and such other lands as may be necessary in making heavy excavations or embankments, or for the purpose of wasting material from excavations, or for borrowing earth or other material for the construction of embankments, or protecting, making and keeping safe, and perfecting its roadway, * * * and may relocate any portion of its line for purpose of straightening or otherwise improving the same, and for that purpose may acquire by gift, purchase, or condemnation all necessary rights of way over lands, and abandon its original or constructed line, but it shall not change its termini; or make an entire departure from its original line between such termini."

The two applications for this condemnation, as amended, with the exhibits attached, showing the width and length of the strips of the land desired and the purposes and necessities for it, were introduced in evidence by the petitioner without objection by defendant. Each is verified by affidavit, and the affiant states therein under oath "that the statements in the foregoing application are true and correct as therein alleged," and both applications contain in substance this allegation:

"That where the land sought to be condemned, as shown by the particular description here-

inafter set out, exceeds in width 100 feet, applicant avers that such additional land over and above said 100 feet is necessary in making heavy excavations or embankments in relocating said railroad as above set out, except the land described in paragraph B hereof, which is necessary for the purpose of borrowing earth or other material for the construction of embankments in so relocating its railroad, and such additional lands are sought to be condemned for such uses and purposes. That the right, easements, ways, and rights of way herein sought to be condemned and taken are necessary for the uses and purposes hereinabove specified."

[1] Two civil engineers of experience in railroad work were examined by the petitioner, and their testimony tended to show this land in width in excess of 100 feet and this land for borrow pits were all necessary for making heavy excavations or embankments, or borrowing earth or protecting, making, or keeping safe or perfecting its roadway. The defendant offered no evidence on this issue. There was some evidence tending to show a necessity for this extra width in the right of way of this land, and for this land for borrow pits by this railroad for the purposes permitted by the statute, as indicated in the applications. Section 7018, Code of 1923. And the court did not err on this evidence in granting the applications and condemning the land in excess of 100 feet in width and the land for borrow pits, as described in the applications as amended for the purposes mentioned. Section 7018, Code of 1923.

[2] Assignments of error from 2 to 7, inclusive, relate to rulings of the court overruling objections by defendant to questions propounded by the petitioner to its civil engineer, witness as to the necessity of the extra width in the right of way. The court did not err in permitting the civil engineers to testify as to the different widths of a right of way necessary for the construction of a railroad base for fills of different heights on this land. One was a graduate in his calling at the University of Tennessee, and has had from 20 to 25 years' actual experience in connection with this kind of railroad work, and the other had been connected with the engineering work of the petitioner since 1914. Each had before him the maps and profiles of petitioner, which were introduced in evidence, showing in detail the plans and specifications of the relocated railroad through this land, and were testifying as to the fills and the widths of the right of way on this land, as proposed by the plans. There was evidence before the court to show the facts substantially as they were embraced in the hypothetical questions allowed by the court to be propounded to the witnesses by the petitioner; the witnesses were competent to give their opinion thereon as experts, and it was not error for the court to allow them to answer the hypo-

thetical questions. Birmingham L. & P. Co. v. Moore, 148 Ala. 115, headnote 8, 42 So. 1024.

[3] It appears from the evidence that two public roads cross this right of way through the lands of defendant proposed to be condemned and used by petitioner as its roadbed; and the court, over the objection of the defendant, permitted Mr. Gobbett, the resident engineer in charge of this particular construction work, to testify that the plan of petitioner was to have an overhead bridge put in at both of the public road crossings. In this the court did not err. These crossings were on the right of way, and on the land of defendant. This evidence tended to show the land was to be used by petitioner in erecting overhead bridges over its track for the public to cross by these public roads, thereby protecting and keeping safe its roadway, as permitted by the statute. Section 7018, Code 1923.

It is true the court of county commissioners possess original and unlimited jurisdiction in relation to the establishment, change or discontinuance of roads, bridges, etc., "except where otherwise provided by law." Section 6754, Code of 1923. However, under section 7027 of the Code of 1923, railroads may cross public roads, when necessary in the construction of their railways, and must place the public road so crossed in condition satisfactory to the county authorities having the control thereof, and where practicable the railroad must go over or under the public roadway. This witness for petitioner was an engineer in charge and supervision of the construction work of this railroad through this land that is being condemned, and across which are two public roads, and the trial court did not err in allowing him to show the plans of the petitioner with reference to the public roads crossed by this railroad on land of defendant. Sections 7018, 6754, and 7027, Code of 1923.

[4] It appears the railroad built a fill and sewerage over the creek running through a 60-acre bottom of defendant. The sewer of the fill was placed on the bottom surface of the creek. This bottom was wet before and after the fill and sewerage were made. The defendant offered to prove that this wet 60-acre bottom could have been drained before the erection of this fill and sewer, by a ditch to the creek and by lowering the bed of the creek 8 to 10 feet as it ran through his land, above, through, and below the fill and sewer; but it cannot now be done, since the fill and sewer were erected by the railroad on the surface of the bottom of the creek. This testimony was excluded by the court.

Appellant admits in brief that "the bottom was wet and unfit for cultivation at the time of the building of the fill, and the building of the fill left it in the same condition." He complains at no injuries now to the bot-

tom from the fill and sewer, but of injuries that may arise in the future, should he determine to ditch this bottom to the creek and by lowering the bed of the creek through his land and through the fill to the depth of 8 feet. This damage claimed to this 60-acre bottom was not certain and definite when the fill and sewer were constructed and the cause tried. These claimed injuries did not exist at that time. They were not capable of being ascertained. They are dependent on the indefinite plans of the owner to probably drain this bottom in the future by a ditch to the creek and by lowering the bed of the creek 8 feet through the fill and sewer. Ala. P. Co. v. Keystone Lime Co., 191 Ala. 58, headnotes 1 and 3, 67 So. 833, Ann. Cas. 1917C, 878; Meharg v. Ala. Power Co., 201 Ala. 555, headnote 2, 78 So. 909. This sewer through this fill was placed on the surface of the earth as it then existed. The condition of this bottom land was left as it existed before the sewer was placed there. The bottom was as well drained after as before the sewer was placed there, under the foregoing admissions of appellant. Such damages to lands not taken are not sufficiently direct and certain to be recoverable in this proceeding. This rule was stated in Kan. & Tex. Ry. v. N. W. Coal & Mining Co., 161 Mo. 288 and 325, 61 S. W. 684, 693 (51 L. R. A. 936, 84 Am. St. Rep. 717) as follows:

"Courts must deal in cases like this with the conditions that exist at the time condemnation is asked, and cannot take into account conditions that may or may not arise or be created thereafter."

So we hold, under the foregoing authorities, that the trial court did not err in excluding that testimony of the defendant from the consideration of the jury.

The judgment is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.