110 So.2d 896

**SHELBY COUNTY**

v.

Claire M. BAKER, as Admrx., et al.

**7 Div. 386.**

Supreme Court of Alabama.

April 9, 1959.

114

Maurice F. Bishop, Birmingham, and Handy Ellis, Columbiana, for appellant.

Wales W. Wallace, Jr., and Karl C. Harrison, Columbiana, for appellees.

**116**

SIMPSON, Justice.

This cause comes to this court on appeal from the Circuit Court of Shelby County from a jury verdict and judgment thereon and the overruling of appellant's motion for a new trial in an eminent domain proceeding instituted by Shelby County to acquire land for public highway purposes under § 1 et seq. of Title 19, and § 25 of Title 23, Code 1940.

The only question involved on trial was the amount of damages and compensation to which the owners were entitled. The jury returned a verdict for $8,000. From that verdict, the judgment thereon, and the denial of its motion for a new trial, the county has taken this appeal.

The questions presented on this appeal concern what appellant alleges were various erroneous rulings on the evidence, improper argument, and ineradicably prejudicial statements made by counsel for appellees during the course of the trial. Appellant asserts that those errors lead to a reversal of the case. Appellant does not contend that the amount of the award was excessive, but we assume it implies that the alleged erroneous rulings in some way affected the valuation fixed by the jury.

■ Appellant has assigned thirty separate grounds as error, but has argued them in groups, so as to make available to this Court application of the rule that where assignments of error not kindred in nature are argued together and one of them is without merit, the others in the group will not be examined. Housing Authority of

City of Decatur v. Decatur Land Co., 258 Ala. 607, 64 So.2d 594; Taylor v. Taylor, 251 Ala. 374, 37 So.2d 645; Moseley v. Alabama Power Co., 246 Ala. 416, 21 So.2d 305. However, many of the assignments seem to be somewhat kindred, and, in deference to counsel, we will consider them.

■ Assignments 1, 23, and 28 were not argued in brief by the appellant and are waived. Rule 9 of the Supreme Court Rules of Practice, Appendix, Pocket Part, Title 7, Code 1940.

We will first consider Assignments 2 and 3. After the Court had qualified the venire by inquiring, among other things, whether any member of the jury was employed by or otherwise connected with the petitioner, Shelby County, or was employed by the State of Alabama, the following colloquy occurred:

"By Mr. Wallace: We ask permission to question the jury as to their connection with the Federal Government. If you have any questions the Court will give you permission to do that.

"By Mr. Harrison: Is there any member of this jury employed by the Federal Government?

"By Mr. Bishop: We object to that, may it please the Court.

"By the Court: Overrule the objection.

"By Mr. Bishop: We except.

"By Juror: I am.

"By the Court: What is your name?

"Juror: David Reynolds. I am employed at the Anniston Ordnance.

"By Mr. Wallace: We might at this time say that it is our understanding that the Federal Government has an interest in this law suit, and if we are wrong about it that question would be improper, and we ask counsel for the other side if they would furnish us

information as to whether or not the acquiring of this right of way would be reimbursed in any part by the Federal Government.

"By Mr. Bishop: We object to that, may it please the Court, and ask this Court to declare a mistrial in this case.

"By the Court: No sir, the Court will not declare a mistrial.

"By Mr. Bishop: We except.

"By Mr. Wallace: This is like an insurance company—

"By Mr. Bishop: This isn't any insurance case.

"By Mr. Wallace: Like an insurance company where a person is insured for liability insurance. You question the jury as to whether or not they have any interest. Now, in this case we don't know for certain that the Federal Government does have an interest and ordinarily the other side informs you of that fact when you ask them. If we can't get that information we have no other recourse than put Mr. Bishop or Mr. Ellis on the stand and ask them whether or not the Federal Government would pay any part of the condemnation award that this jury might issue in this case.

"By Mr. Bishop: We object to that statement, and particularly object to the comparison of this proceeding with anything analogous to any insurance or liability insurance. The only purpose in the world for that is an attempt to prejudice the minds of these gentlemen who would be calculated to serve on this jury. We object to it, and we ask the Court—as this Court well knows there is no insurance in this case, and they have so admitted there is no insurance in this case. So, obviously the only purpose of it is prejudicial effect, and we move at this time again for a mistrial on that ground, regretfully so, but it appears they want to continue to inject those *inflamatory*

suggestions in the minds of this jury— these gentlemen who are calculated to serve on this jury, and we think it is highly improper, and we move again for a mistrial.

"By the Court: The motion is denied.

"By Mr. Bishop: We except.

"By Mr. Wallace: We offer, Your Honor, to put Mr. Bishop on the stand and ask him the direct question whether or not the Federal Government would be liable to pay any part of the condemnation award that this jury renders in this case, as it would show that they were the real party in interest in this case. There is a case up here in St. Clair County where they were not able to find out who the ultimate person was who was to pay the award, and upon refusal of other counsel they put him on the stand, and asked him the question. I would like to say to the Court we resent strenuously his saying we are trying to inflame the minds of this jury by saying they are an American citizen working for the Federal Government. We resent that strenuously. We are merely trying to see who the real party in interest is; who is going to pay this award which the jury renders.

"By the Court: This is a suit by Shelby County condemning this right of way for a road.

"By Mr. Wallace: For the record, Your Honor, we offer to put Mr. Bishop, the attorney of record for the condemnor, on the stand and ask him the specific question as to whether or not the Federal Government would be liable for any judgment which this jury might render in this case, and we offer at this time to do so.

"By the Court: I deny your motion.

"By Mr. Wallace: We except, Your Honor."

Appellant insists that the trial court erred in overruling its motion for a mistrial based upon the allegedly prejudicial statements of counsel for the appellees made during that colloquy referring to the federal government and the suggested payment by it of any award. Appellant also urges that error was committed at that point during the voir dire examination of the prospective jurors when the court failed to grant a mistrial based upon the reference to the subject of liability insurance by counsel for the appellees.

■ Either party in both civil and criminal cases "shall have the right to examine jurors as to their qualifications, interest, or bias that would affect the trial of the case, and shall have the right, under the direction of the court, to examine said jurors as to any matter that might tend to affect their verdict." Title 30, § 52, Code 1940. Under this statute it has been held that the rights thereby given are to be exercised within the sound discretion of the court. The inquiry permitted should be liberal and extend to any and all matters touching the qualification, interest, or bias of prospective jurors. This code section "gives to parties having respective peremptory challenges or the right to a struck jury, the right within the limits of propriety and pertinence to reasonably propound questions to jurors to enable such party or his counsel to intelligently exercise that right, though the matters of which inquiry is made are not a disqualification." Dyer v. State, 241 Ala. 679, 4 So.2d 311, 313; Cox v. Bennett, 250 Ala. 698, 36 So.2d 86; Redus v. State, 243 Ala. 320, 9 So.2d 914; Rose v. Magro, 220 Ala. 120, 124 So. 296. "The right of inquiry under the statute is a broad right just so it is not exercised in bad faith or merely designed to prejudice the case." Cox v. Bennett, supra [250 Ala. 698, 36 So.2d 88]; Duke v. Gaines, 224 Ala. 519, 140 So. 600.

■■ Close scrutiny of the statements made during this voir dire colloquy fail to impress us that counsel for appellees exhibited bad faith or attempted to, or did, prejudicially influence the case in either of the respects urged by the appellants. A proper subject of inquiry on voir dire examination is whether any of the jurors were city employees in a matter in which that municipality is or was interested. Rose v. Magro, supra; Nix v. City of Andalusia, 21 Ala.App. 439, 109 So. 182; City of Birmingham v. Lane, 210 Ala. 252, 97 So. 728. By analogy, if the federal government had an interest in the suit which might have some bearing upon the bias of a juror by virtue of its program of assistance to the states in the construction of roads, then such relationship would be a legitimate subject of inquiry.

See also Housing Authority of City of Decatur v. Decatur Land Co., supra, which involved a proceeding for condemnation of realty by the housing authority of the city of Decatur, where we held that evidence that money for the project would be obtained from the federal government would have value on cross-examination bearing on the credibility of the opinion of a witness relative to the cost of a drainage project.

■ We are also persuaded that appellees were not trying to inject the question of insurance into the case, as appellants claim. The remarks of counsel for appellees concerning insurance were undoubtedly analogizing the legal problem raised by appellant's objection against asking the jurors about any employment relationship with the federal government to the familiar question of voir dire inquiry concerning interest in liability insurance companies. We take judicial notice of the numerous cases in this jurisdiction bearing upon that latter subject. Thus those remarks were in the nature of argument before the trial judge pertaining to a legal issue compounded by the appellants. Moreover such remarks could have had no misleading effect, as there was no question about insurance involved in the case. The better practice would probably have been to exclude the jury from such an argument between counsel over the propriety of the

question demanded, and appellant could have made such a request. But as stated, examination of prospective jurors is within the court's control and discretion, and in the instances noted we cannot say that that discretion was abused.

◼ Assignment 4 is as follows:

"Counsel for the Appellees committed reversible error in making prejudicial statements in the presence of the jury after objections to such inquiry were properly sustained by the trial court (R. 147–167)."

Apart from the fact that this assignment throws upon the Court the burden of searching through twenty-one pages of the transcript for the alleged prejudicial statements mentioned, the assignment itself is much too general to invite our review of the error thus assigned. Hornaday v. First Nat. Bank of Birmingham, Inc., 259 Ala. 26, 65 So.2d 678; Alabama Chemical Co. v. Hall, 212 Ala. 8, 101 So. 456; Globe & Rutgers Fire Ins. Co. v. Jones, 213 Ala. 656, 106 So. 172; Rule 1, Supreme Court Rules of Practice, Appendix, Pocket Part, Title 7, Code 1940.

◼ The next three assignments of error attack what appellant considers to be improper statements, prejudicial and ineradicable in the minds of the jury, made by the counsel for the appellees in his oral argument to the jury. Reference to the record reveals that only the following portion of the proceeding pertaining to the first of these three assignments has been transcribed:

"By Mr. Bishop: Your Honor, we object to any comparison. Mr. Wallace has just made the statement, comparing the eminent domain provisions with those of Russia. Obviously just for one purpose to inject prejudice into this matter, and we object to any reference to Russia or communism or any other ism not involved in this proceeding.

"By Mr. Wallace: Your Honor, I would like to have it taken out of my time if I have to argue any objections. I certainly did not compare it. I said our country was not like that.

"By Mr. Bishop: So that the record will be abundantly clear as to what he did say, it is my recollection he said that our Court is not like that of Russia where they can come in and grab your property and take it at any time. We object to that statement as being highly prejudicial.

"By the Court: I will sustain the objection to that.

"By Mr. Wallace: We except."

Appellant charges that appellee's counsel thus made, in the quoted part, a prejudicial comparison of our eminent domain proceedings with the government of Russia. However, such fragmentary record of the proceeding at that point does not sufficiently set out the statement of the attorney in its context or show just what preceded or followed the expression in order to command review. Housing Authority of City of Decatur v. Decatur Land Co., supra; Alabama Great Southern R. Co. v. Baum, 249 Ala. 442, 31 So.2d 366; Crotwell v. Cowan, 236 Ala. 578, 184 So. 195; White v. State, 236 Ala. 124, 181 So. 109; Birmingham Loan Co. v. Klinner, Ala.App., 95 So.2d 402; Page v. Harris, 32 Ala.App. 232, 24 So.2d 268, certiorari denied 247 Ala. 323, 24 So.2d 269; Gray v. State, 19 Ala.App. 550, 98 So. 818.

Furthermore, it appears from the record that the appellant's objection was sustained to the argument found objectionable, and so far as we can determine, this rectified any injury incurred—if so.

◼ Assignment 6 claims error in the comparison of the subject proceedings to those involving a "Mrs. Williams on U. S. Highway 31" when there was no evidence regarding the other proceedings in the rec-

ord. The transcript contains only the following with respect to this assignment:

"By Mr. Bishop: We object to comparing a Mrs. Williams, that is a situation on Highway 31, and there is absolutely no evidence in this record as to that proposition. It is injected purely for the purpose of prejudice.

"By the Court: There is some evidence about 31. That is a question for the jury to pass upon the testimony. Overrule the objection.

"By Mr. Wallace: We don't insist on it any way, Your Honor.

"By Mr. Bishop: We except.

"By the Court: It has been withdrawn."

It is noted that appellees' counsel did not insist on whatever statement was made; the Court ruled it withdrawn and we fail to see any prejudicial error here.

Assignment 7 avers error in the trial court's failure to sustain appellant's objections on two separate occurrences during appellees' argument to the jury which appear in the record as follows:

"By Mr. Bishop: We object, Your Honor, to Mr. Wallace's statement in reference to the houses of the gentlemen of the jury. Improper argument.

"By the Court: Overrule the objection.

"By Mr. Bishop: We except."

It is likewise clear, just as with Assignment 5, that Assignments 6 and 7 do not merit consideration for the reason that the parts of the record upon which they are founded are too fragmentary.

Assignment 8 deals with the refusal of the trial court to permit the Resident Engineer of the State Highway Department to testify that the state planned to make Alabama Highway 91 a four lane highway through Shelby County. The exact questions to which appellees' objections were sustained are the following:

"Now, Mr. Bryson, with reference to the planned program for the construction of Highway 91 through Shelby County is it the plan of the State Highway Department that ultimately that highway will be broadened into a four lane highway through Shelby County?"

"Is the plan ultimately that the four lane highway continues through Shelby County as a part of the interstate system?"

 Appellant contends that the questions asked were confined to present plans of the Highway Department and that the proposed construction would be an improvement and should result in some enhancement to the subject property. For these reasons it is urged that the testimony sought to be elicited was admissible. The authority which he cites to support this proposition, however, merely holds that in eminent domain proceedings the plans, specifications, or stipulations of the condemnor as to the nature of the improvements to be constructed *on or about the premises sought to be condemned,* or the use to be made of such premises, are admissible in evidence to enable the jury to fix the damages of the owner of the premises with more precision. East Peoria Sanitary Dist. v. Toledo, P. & W. R. R., 353 Ill. 296, 187 N.E. 512, 89 A.L.R. 870; 29 C.J.S. Eminent Domain § 269, p. 1252. This same rule obtains in this state, as it is applied in the case of Pearson v. Central of Georgia Ry. Co., 215 Ala. 239, 110 So. 5, which appears in the note at 89 A.L.R. 879. But this rule cannot be extended to warrant the admission of plans of the condemnor pertaining to work remote either as to proximity to the subject tract or as to time in the future when further construction is anticipated. If it were otherwise, a condemnor could introduce evidence in mitigation of the damages to which a condemnee was entitled by showing plans and surveys of work the completion of which might be speculative or contingent. Cf.

State v. Carter, 267 Ala. 347, 101 So.2d 550, where the court charged the jury that it could take into consideration upon the market value of the property under the circumstances there shown the effect of proposed sanitary sewerage improvements to be constructed by the City of Gadsden which were to serve the lots there sought to be condemned, and where apparently the project had reached further than the mere planning stage.

■ Assignment 9 asserts error in the ruling of the court excluding testimony of the Resident Engineer as to the control point of the highway at the time of trial and, apparently, also at the time of condemnation. The statement excluded is the following:

"Bailey's Gap is a point a mile, approximately a mile, maybe a little more south of this point where the present road traverses through the mountains to Bailey's Gap and is a control point."

A reading of this testimony in the context in which it was made reveals that it served to place the location of the control point with reference to the project about one mile south of the subject property. It is difficult to perceive what relevance this matter has to any issue in the case, except possibly to shed some light upon whatever enhancement effect upon condemnee's remaining land a contemplated future extension of the construction project might have. For the reasons already stated in the discussion on Assignment 8 the exclusion of such testimony was without error.

■ Assignment 10. Reversible error is claimed when counsel for appellees inquired three successive times as to who would pay for the right of way sought to be acquired, with objections thereto being repeatedly sustained by the trial court, and then stated:

"And we expect the evidence to show the State of Alabama and the Federal Government will pay this, whatever is rendered by this jury ultimately."

We can find only two such questions on the record pages referred to by the assignment, not three. And one question relates to payment for construction of those highways, while the other concerns payment for the right of way being obtained. It is not necessary to determine the propriety of those questions, as the trial court sustained appellant's objections to both. We cannot say prejudice was created in the minds of the jury by posing these inquiries. The statement which followed indicated that counsel was exercising the well recognized right to inform the court just what facts he expected to prove by the witness interrogated in order to preserve error for appeal in the event of an adverse ruling. Fikes v. State, 263 Ala. 89, at page 98, 81 So.2d 303, at page 311, reversed and remanded on other grounds 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246; Burnett v. Garrison, 261 Ala. 622, 75 So.2d 144; Stallings v. State, 249 Ala. 580, 32 So.2d 236; Roberts v. McCall, 245 Ala. 359, 17 So.2d 159; Flowers v. Graves, 220 Ala. 445, 125 So. 659; Bryer v. State, 34 Ala.App. 561, 42 So.2d 496; Spurlock v. State, 17 Ala.App. 109, 82 So. 557. Moreover, it seems unnecessary to pass upon the propriety of that remark or the admissibility of the testimony for the purpose stated in the absence of either an objection or motion to exclude timely made and an adverse ruling by the trial judge. Dorroh v. Jefferson County, 264 Ala. 335, 87 So.2d 619; Troy Laundry Mach. Co. v. Joyce, 229 Ala. 331, 157 So. 214; Metropolitan Life Ins. Co. v. Carter, 212 Ala. 212, 102 So. 130; Western Union Telegraph Co. v. Howington, 198 Ala. 311, 73 So. 550; Sloss-Sheffield Steel & Iron Co. v. O'Neal, 169 Ala. 83, 52 So. 953; Clark v. Hudson, 265 Ala. 630, 93 So.2d 138. The requisite objection and ruling cannot be read into the following discourse, which immediately followed the remark:

"By Mr. Bishop: If the Court please, we hate to keep objecting to this, but Your Honor has ruled on this subject five times.

"By the Court: The Court is going to ask you gentlemen not to get on that any more.

"By Mr. Wallace: We do have the right, as the Court knows, under the Supreme Court ruling to say what we expect our evidence to show which we have done and we won't go into it again.

"By Mr. Harrison: We are sincere in our approach to this matter."

■ Appellant has not sustained the burden upon him of not only showing error, but also showing that he has probably been prejudiced by the error. Berry v. Dannelly, 226 Ala. 151, 145 So. 663; Dorough v. Alabama Great Southern R. Co., 221 Ala. 305, 128 So. 602.

■ Assignment 11 reads as follows:

"The trial court erred in denying Appellant's motions for a mistrial on the basis of counsel for the Appellees repeating four times questions to which objection previously had been properly sustained by the trial court (R. 60, 61, 105)."

This assignment is entirely too general to invite a review.

Assignment 12 is no more than identical with the previous assignment except that it applies only to page 105 of the transcript. What was said above suffices to dispose of this assignment.

■ It was not error, as charged in Assignment 13, for the court to refuse to allow into evidence a sheet of paper containing figures related by the witness John D. Chichester reflecting his opinion of the market value of the subject property. This evidence was somewhat analogous to the use of a blackboard for the purpose of illustrating testimony, held to be within the sound discretion of the trial court. Clark v. Hudson, supra; Nelson v. Johnson, 264 Ala. 422, 88 So.2d 358; Crocker v. Lee, 261 Ala. 439, 74 So.2d 429. But, as pointed out in Nelson

v. Johnson, supra, such media of illustration are not evidence. They may be demonstrated in the presence of the jury during the trial and final argument within the sound discretion of the trial court. Clark v. Hudson, supra; Crocker v. Lee, supra.

■ Assignment 22 is directed to the admission into evidence of an alleged traffic count in front of the subject property, when such traffic count was never established and when no person having any knowledge of any such traffic count was made available for examination. The following passage in the record relates to this assignment:

"Q. I will ask you, Mr. Carter, did you hear DeJarnett, who is head of this division here, did he tell you that the traffic count had reached over four thousand cars a day up there?

"By Mr. Bishop: We object to that, that is obviously hearsay.

"By Mr. Wallace: Mr. DeJarnett is a representative of the State, may it please the Court.

"By the Court: I sustain the objection.

"Q. You based that on the proposition of four thousand cars a day?

"By Mr. Bishop: We object to that.
"A. Yes, sir.

"By the Court: If they don't connect it up.

"By Mr. Wallace: He said he based it on that basis, Your Honor.

"By the Court: If you don't get any proof of it then it wouldn't be worth anything.

"By Mr. Wallace: May be we can get Mr. DeJarnett here by tomorrow, he is working for the State.

"By Mr. Wallace: That's all."

Appellant urges that obvious hearsay testimony was thereby admitted over his

objection. But the recitation shows no adverse ruling. In fact, the only ruling of the court is one sustaining the objection of appellant and hence this assignment avails nothing. Dorroh v. Jefferson County, supra.

 Assignment 14 charges that the trial court erred in admitting in evidence during cross-examination of appellant's expert witness, over the objection of appellant, testimony relating to the value *after* construction of the project of contiguous properties involved in condemnation proceedings for construction of the same road project. The assignment calls the Court's attention to pages 58, 70–72, and 91 of the transcript. A reading of page 58 reveals no connection with the generally alleged error. Page 91 does not show that the witness responded to the inquiry to which objection was made and overruled, but in fact answered that he did not recall. Whatever error might have occurred on pages 70–72, where it is shown that the court overruled appellant's objections and an answer was finally elicited about the witness' expert appraisal of the little triangular piece of land contiguous to that of appellees, was cured by what was next brought out in the following colloquy:

"By Mr. Wallace: In other words, what he appraised it at, not what he testified, what he appraised it at as of the date of that taking.

"By Mr. Bishop: I object to that question, may it please the Court.

"By the Court: Overrule the objection.

"By Mr. Bishop: We except.

"A. I appraised the remainder of the Popwell land you are talking about, an acre, triangular shape, around 500 foot frontage on the new highway for $750.00.

"Q. That is just about an acre? A. That is my recollection.

"Q. Now, not what you appraised it at, but what you appraise it at now as of the date that this suit was filed. That is what I am asking you just to keep the record straight. A. That was the same dates, $750.00.

"Q. In other words, I am not asking you what you appraised that for, I am asking you what your appraisal is at this time as of that date?

"By Mr. Bishop: We object to that, may it please the Court.

"By the Court: I think he has made it clear. Overrule the objection."

Appellant argues that the questions dealt with the value of the property after condemnation of the subject tract and had no relation to the market value at the time of taking or to the "before and after" value of the subject parcel. But, as we understand the passage recited above, and the portion preceding, which is rather vague, the appraisal data sought to be elicited was that made at the time of the taking of the contiguous property by a different condemnation proceeding filed at the same date with the instant proceeding. This must have been clearer to those present at the trial than it is to us, for the trial judge seemed to comprehend. At any rate, if our view is correct, no reversible error is present because of the curative effect. The trial judge was on the scene, and his ruling cannot be held to be an extreme abuse of his sound judicial discretion with regard to the latitude and extent of cross-examination. It has been held that such cross-examination may even pertain to irrelevant and immaterial matters as bearing on the memory, accuracy, credibility, interest or sincerity of the witness. Housing Authority of City of Decatur v. Decatur Land Co., supra, and cases therein cited. See also Pryor v. Limestone County, 230 Ala. 295, 160 So. 700.

 Assignment 15 relates to the action of the court in allowing a witness for

the appellee to testify, over the objection and exception of appellant, to the reasonable market value of the 8.03 acres being taken. The evidence shows that the witness had been in the real estate and insurance business since 1946 with experience in Shelby County and other parts of the state and that he was familiar with the market value of land around Highway 91 in Shelby County. The witness had been over the property and other adjacent land for appraisal purposes. He was therefore shown to be qualified.

■ For the same reasons appellant cannot avail by Assignment 19, which raises the same objection as number 15 except as to another witness. The witness was properly and sufficiently qualified to testify as to this matter, and the testimony, as shown above, was admissible. He was a property owner in Shelby County, having lived on the Florida Short Route near Chelsea for twenty years. He was familiar with various sales and offers for sale of property in and around Shelby County, and he knew the value of lands in and around the subject property. He had known the subject property for twenty years, having passed it frequently. And he testified that he knew the reasonable market value of the subject property.

■ Assignments 16, 17, and 18 all concern the alleged absence of a showing that certain witnesses of appellee called to testify as to market values of the property in question were qualified to do so. We have examined the record carefully and conclude that enough was adduced to satisfy that requirement. The general rule applicable here is that the test of qualification has been prima facie met when it is proved that the witness testifies he knows the property and the market value of the same. Housing Authority of City of Decatur v. Decatur Land Co., supra; American Ins. Co. of Newark, N. J. v. Fuller, 224 Ala. 387, 140 So. 555; 159 A.L.R. 30. Of course, the weight and credibility to be attributed to each expert witness was for the jury. Alabama Power Co. v. Henson, 237 Ala. 561, 187 So. 718.

■ The import of Assignment 20 is that the trial court erroneously permitted the appellee, Jack Baker, to testify to the market value of the property on the sole basis that he was the owner of the property. This was not error. An owner of land, by virtue of his ownership, may testify as to its value. Alabama Great Southern R. Co. v. Russell, 35 Ala.App. 345, 48 So.2d 239, and authorities there cited.

■ Assignment 25 takes the position that the trial court erred in overruling appellant's motion to exclude a voluntary statement of the witness Joe Roden as to unsupported values of property "adjoining the Montgomery highway". The objection was phrased, "I move to exclude all that statement about the Montgomery Highway". Unless the evidence is manifestly irrelevant and illegal, error will not be predicated on the action of the court in overruling a general objection. Johnston v. Isley, 240 Ala. 217, 198 So. 348; Burgin v. Stewart, 216 Ala. 663, 114 So. 182; Grissom v. Dahart Ice Cream Co., Inc., 34 Ala.App. 282, 40 So.2d 333, certiorari denied 252 Ala. 235, 40 So.2d 339; Dunaway v. Roden, 14 Ala.App. 501, 71 So. 70; Alabama City G. & A. Ry. Co. v. Ventress, 171 Ala. 285, 54 So. 652. The statement made by the witness was:

"I said on the average. That is not in big lots, if it is a big lot of land I said its value—you can't buy it, you can't yourself go up and down the Montgomery Highway and you can't buy a piece of property 300 foot, *jut* by frontage, small acreage, not in big acreage. In small acreage you can't buy property up and down either highway with I would say ten miles any how for less than $1500.00 or $2000.00 an acre."

We cannot say that this statement was manifestly irrelevant or illegal.

■ Assignment 24 charges that the trial court erred in permitting the witness Alvin Stinson to testify that a service station on U. S. Highway 31, located some distance away, suffered a forty per cent loss of business after construction of a four lane highway.

"By Mr. Wallace: Your Honor, that is the only place they could have a four lane highway. That is the only place any one could have gotten any experience as to what happened.

"By the court: I will let him answer the question you originally asked him about it.

"Q. Well, I will ask you in general have you made a check as to filling station sales? A. I will say it will run around about forty per cent.

"Q. You have actually made a check, have you? A. Yes, sir. I could give you some figures on it."

It is not clear to which question the court referred as the one originally asked or whether that, in fact, was the one asked next by counsel. Nevertheless, no timely objection or motion to exclude was interposed, and there is nothing to review. Appellant's other objections raised during that interlude were sustained.

■ Assignments 26 and 27 relate to the action of the court in admitting in evidence, and overruling appellant's objections and motions to exclude thereto, the testimony of Robert Powers to the effect that his volume of sales decreased after a four lane highway was constructed near his service station and that the amount of this decrease was approximaetly forty per cent. As noted in the discussion on Assignment 25, the objections and motions to exclude were all general. One motion was stated, "We move to exclude the answer on the same grounds". But no grounds had been previously specified. We cannot say that the testimoy thus adduced was clearly incompetent, irrelevant, immaterial, or illegal. Witness Chichester for the appellant had stated on direct examination that one of the tests of establishing value of a piece of property was the income which it produced. He further testified that the new four lane highway would enhance the value of the property. It was further shown by witnesses for the appellee that prior to the institution of the condemnation proceedings that the land being taken was suitable for a filling station site. Appellant argues that the courts have universally held that an owner may not receive compensation for any loss of business, as evidence of speculative and contingent damages is wholly inadmissible. But the tendency of the testimony in question was evidently not for this purpose. The evidence clearly showed that at the time of the taking of the property, it was producing *no* income. The testimony now in question would furnish some support to the theory of the appellees that the location would be suitable for service station purposes and that the four lane highway would be a detriment rather than an enhancement to the property. In the absence of a specific objection, therefore, error can not be pronounced in this ruling.

■ Assignment 29 is that the trial court erred in receiving in evidence, over appellant's objections, a title insurance policy on the subject property. It is our understanding of this assignment, without more specificity, that the appellant objects to the introduction into evidence of the policy itself. The transcript, however, reveals that after the policy was marked "Defendant's Exhibit No. 4", and a few preliminary questions were asked, and counsel for appellees finally offered the policy by saying, "We introduce this in evidence", no objection was made by appellant and consequently no ruling was had. This assignment is not open for review for another reason. The policy was not transcribed into and made a part of the record, but in

lieu thereof apparently the original copy of the policy has been attached to the margin of page 220 of the record, with the statement in parentheses on that page, presumably by the clerk of the court, as follows:

"(It not being practicable or feasible for the court reporter to copy said Defendant's Exhibit No. 4 the same is attached hereto and made a part of this record.)"

Supreme Court Rule 41 (Old Rule 47) has not been complied with in this respect. Starkey v. Bryant, 257 Ala. 557, 59 So.2d 796. See also Calvert v. Calvert, 265 Ala. 529, 92 So.2d 891. There is still another reason why we think this assignment must fall. It is true, as appellant contends, that the amount for which property is insured does not afford a test of value of sufficient probative effect to be admissible. Alabama Great Southern Railroad Co. v. Loveman Compress Co., 196 Ala. 683, 72 So. 311; City of Dothan v. Thomley, 220 Ala. 618, 127 So. 193; 31 C.J.S Evidence § 182, p. 885. But there was another purpose for which the policy could have been admissible. Appellant had produced during their cross-examination of appellee, Jack Baker, the deed by which the appellee had obtained title to the subject property. The deed was admitted into evidence, and it was further elicited from the appellee, as the face of the deed bears out, that the recited consideration therefor was $12,000. Appellee's testimony throughout the trial was that he paid $25,000 for the land. By the introduction of the title insurance policy on the land on the re-direct examination of the appellee, it was the obvious purpose of counsel for appellees to show the true consideration of the deed and to corroborate the testimony of appellee as to what he had in fact paid for the land. This is supported by the fact that the evidence shows that the policy was a part of the whole transaction negotiated by Baker's lawyers. It is well settled that the consideration stated in a deed is only prima facie, and the true consideration may be found from the acts, words, and writing of the parties. Pruett v. First Nat. Bank of Anniston, 229 Ala. 441, 157 So. 846; Union Bank & Trust Co. v. Royall, 226 Ala. 670, 148 So. 399; Gilliland v. Hawkins, 216 Ala. 97, 112 So. 454; Harris v. Geneva Mill Co., 209 Ala. 538, 96 So. 622; Harraway v. Harraway, 136 Ala. 499, 34 So. 836. And the general rule prohibiting the variance of a writing by parol evidence also does not exclude such evidence in an action between a party to the instrument and a stranger, nor is it binding upon either of the parties in their controversies with third persons. Harris v. Geneva Mill Co., supra; Jones v. First Nat. Bank of Greensboro, 206 Ala. 203, 89 So. 437. Furthermore, the appellant, in cross-examining the appellee Baker, questioned him regarding a closing statement of the transaction, showing how much was paid and any expenses in connection with the purchase, furnished him by his attorneys in Birmingham. It further elicited testimony from appellee as to a bill for the services from his attorneys. The title insurance policy was part of the transaction negotiated by the attorneys. So it would seem that this line of inquiry had been opened by the appellant itself.

Assignment 30 asserts that error was committed when counsel for appellees was permitted, over appellant's objections, to read in the presence of the jury the amount and substance of a mortgage on the subject property. The assignment seems to be too general in that particular objections and rulings intended on the several appearing on the page in the record mentioned are not specified. The record shows that the court sustained appellant's objection to the introduction of the mortgage. Appellees then renewed their offer to introduce the mortgage, but were interrupted with an objection, which

was overruled. The completed offer is no more than the following:

> "We are offering to introduce a mortgage signed by Jack Cosby Baker and wife—(interruption) And Clara M. Baker to P. P. Baker and P. G. Baker, as trustees under a deed of trust, recorded in Vol. 104 Page 1, in the Probate Office of Shelby County, Alabama, in the amount of $25,000.00, was recorded in Mortgage Book 242 Page 25 and dated—recorded on the 7th day of January, 1956."

Appellant then requested the court to instruct the jury that the offer was not evidence and should not be considered by them. The court complied with this request and reminded the jury that the objection to the introduction of the mortgage had been sustained. An objection by appellant to a further offer by appellee to introduce a mortgage release was sustained. We can find no error in this transaction.

Appellant assigns as error in Assignment 21 that the trial court erred in denying appellant's motion for a *new trial* due to repeated statements by counsel for appellees regarding an alleged $25,000 mortgage on the subject property and the issuance of a title insurance policy in the same amount. The motion appellant made, as shown in the record on page 60, was not for a new trial but for a mistrial. Overlooking this defect, we conclude that there is no merit in this assignment.

We are not prepared to say that the various statements throughout the trial individually assigned as being prejudicially erroneous are, in their cumulative effect, so infectious as to require reversal of the case as argued by the appellant on the authority of such cases as Blue v. State, 246 Ala. 73, 19 So.2d 11.

Affirmed.

LIVINGSTON, C. J., and GOODWYN and COLEMAN, JJ., concur.