**520**

156 So.2d 480

Henry F. MIKUL, Sr., et al.

v.

Margaret M. MIKUL.

6 Div. 718.

Supreme Court of Alabama.

May 23, 1963.

Rehearing Denied Sept. 26, 1963.

James, Beavers & Tingle, Birmingham, for appellants.

Griffin & Wilson, Birmingham, for appellee.

PER CURIAM.

Appellants complain here of a judgment for $150.00 rendered against them, separately and severally, in favor of appellee; also of the establishment of a vendor's lien in the sum of $5,000.00 in favor of appellee and against appellants upon certain real estate described in a deed from appellee and her late husband to appellants. The decree rendering the judgment and fixing the lien was rendered by the Circuit Court of Jefferson County, sitting in equity.

The decree above-mentioned is the outgrowth of an amended bill of complaint filed by Mrs. Mikul in her individual capacity against the respondents, who were the brothers of complainant's deceased husband. In this complaint, she alleged inter alia that her late husband, who died on February 11, 1958, was until a short time before his death the president and manager of a real estate company known as Mikul-Wainwright Realty Company, a corporation, organized and doing business in Jefferson County.

The complainant further alleges that on or about November 1, 1957, her husband, John C. Mikul, was in financial difficulties, personally and in his business, and unable to pay his bills as they matured; that his health was in a precarious condition and faced with continuing decline due to an incurable condition.

It appears from the evidence in support of pertinent allegations of the complaint and the answers of respondents thereto that Mr. Mikul, the late husband of complainant, was not only in extremely bad health and faced with financial problems approaching insolvency, but he was guilty of converting trust funds of some customers and facing an indictment therefor. The bank, in which his son was an employee, was refusing payment of checks which the business had issued, much to the embarrassment of his son.

It further appears from the evidence that complainant, with the knowledge of her late husband and with his reluctant consent, sought an audience with appellants, brothers of her husband, and related to them the financial distress of her husband and the imminence of an indictment for embezzlement of trust funds.

The appellants, contrary to the advice of their attorney, motivated by sympathy for their brother and the family embarrassment to them that would ensue, agreed to come to the financial aid of their brother to save him from worry and harassment during his declining health.

It may also be said from the evidence that appellants' brother had very questionable security to offer for the financial aid that was necessary and given under the circumstances. He had an equity in some life insurance policies; a doubtful, and if any, a very small, equity in his home above the first, second and third mortgages thereon.

Appellee and her husband assigned the equity in these insurance policies to appellants, transferred the husband's ten shares of stock in the business corporation, sanctioned the transfer of Mr. Wainwright's ten shares of stock in this company (no other stock having been issued), and also deeded the home place, subject to the three mortgages, to appellants for a recited consideration of $5,000.00, which, according to the recitation in the deed, was paid.

Appellants, in their brief, concisely state the issues presented to the trial judge as follows:

"1. Whether or not the deed to the homeplace was procurred by fraud or undue influence.

"2. Whether or not fraud was used by Respondents on John C. Mikul or Margaret M. Mikul in acquiring the stock of the Mikul-Wainwright Realty Company.

"3. Whether or not fraud or breach of contract existed in the obtaining of the assignment of the insurance policies on the life of John C. Mikul.

"4. Whether or not the consideration was paid for the conveyance of the Hollywood homeplace from John C. Mikul and Margaret Mikul to Henry Mikul, Sr., and Leonard T. Mikul."

We might add that the bill of complaint contained a prayer for general relief that authorized the court, so far as the pleadings are concerned, to fasten a vendor's lien on the real property in an amount equaling the unpaid purchase price.

We have carefully read the opinion of the trial judge in his final decree, from which we quote as follows:

"*   *   *   Both she (complainant) and her husband (John C. Mikul) seem to realize that he was in as hopeless and desperate situation from a financial standpoint as he was from a physical standpoint. Even with the burden being upon respondents on the question, the Court can find no reasonable evidence or inference therefrom of a scheme to pauperize the dying brother and his widow and children. Nor does it find any then present intention not to perform any promises or assurance made. * * * It appears to be a case, as usual, of great hardship—hardship upon all parties not precipitated by them or any one of them, but by the disastrous actions of a party now deceased, doubtless in turn explainable, at least to a large extent, by his physical condition." (Par. added.)

Referring to respondents' contention that the $5,000.00 inserted in the deed as a consideration therefor was so done for income tax purposes, should respondents be called upon to establish a value on the equity they acquired in the real estate described in the deed, the trial judge observed:

" * * * Arguments to the effect that recitals in formal documents are artificial, and made for 'tax purposes' so that their reality or unreality may be asserted subsequently as may be to the then advantage of a party have little appeal to this court, which will now let the deed prepared by respondents speak for the respondents, and find and decree a vendor's lien in favor of complainant as surviving joint tenant with right of survivorship for the sum of *cash purchase price* expressed, which has not in fact been paid. * * * " (Emphasis supplied.)

We conclude from the opinion accompanying the final decree and from the decree that the trial judge decided all issues under the pleading and evidence in favor of respondents and against complainant, except judgment for $150.00 against respondents for conversion of an air conditioning unit, the said sum being the value thereof, and also that respondents were to pay $5,000.00 cash for the equity of complainant and her husband, which sum had not been paid.

We are impressed from our review of the evidence that the respondents, while agreeing to help their brother because of sympathy for him, and to some extent to protect their own business reputation from blight, entered into the transaction from a business angle with great reluctance due to the tangled condition of the business, and the inadequacy of business and personal security that Mr. and Mrs. Mikul could offer.

We have reviewed the accounting that respondents made of the business and personal assets they received during the continuing transactions that took place in the rescue operations; the expenditures made in payment of debts; and also the amount of debts owing by the business and by Mr. Mikul in person. We do not think that an itemization here of the accounting would serve any useful purpose.

We are not impressed that respondents have been guilty of any pressure on complainant and her late husband to squeeze from them any money or property to which they were not lawfully entitled; nor do we find that respondents have taken any undue advantage of complainant and her husband. The accounting made to the court indicates that respondents will be the losers by several thousand dollars. We, of course, have to take much of the testimony of respondents and their witnesses as true in the absence of any contradictory testimony, which is the case here.

But was the trial court correct in finding that respondents, according to the recital in the deed, were to pay a cash consideration of $5,000.00 for complainant's and her husband's equity in the real property which they deeded to respondents? And, was it correct in impressing a vendor's lien on the real estate?

We have held that the consideration stated in a deed is only prima facie and the true consideration may be found from the acts, words and writings of the party. Shelby County v. Baker, 269 Ala. 111, 110 So.2d 896 [36]; Hadley v. Hall, 271 Ala. 325, 123 So.2d 135 [2]. See also, Burroughs v. Pate, 166 Ala. 223, 51 So. 978 [3].

Appellants contend, supported by their own evidence, that there was no cash consideration to be paid for the equity conveyed. They rendered an explanation (unsatisfactory to the trial court) that the recited consideration was to enable them to establish a value for income tax purposes. They further testified that the true consideration was to repay them for sums they expended or intended to expend to get their brother out of his financial difficulties.

This contention is supported and the evidence of respondents is corroborated by the testimony of complainant, which we quote as follows:

"A   My husband told me that he owed some money, and that they were

pressing him for it. It was some money that had come in on a deal and had been used, and that he needed to make it up, and Henry and Leonard would take care of it, I guess you would say pay it off, if I would sign the deed to the house. And he asked me if I was willing to do it, and I told him I would sign it, which I did, and that's what happened; and also, they had taken care of the checks and they said it would be a protection for them, what they were putting out.

"Q All right. Now, the deed you say was signed in your home?

"A That's right."

In addition to the testimony above adduced and referred to, there is other uncontradicted testimony offered by the respondents that the value of the home place shortly after the time of the execution of the deed was $14,000.00, and that the unpaid sums due on the three mortgages, two of which respondents paid off, substantially equaled this value.

■ In view of the evidence to which we have referred, we are not in accord with the findings of the trial court that the recital in the deed of $5,000.00 cash consideration was true and correct and that complainant is entitled to a vendor's lien on the property for the said sum of $5,000.00.

■ We are unable to sustain the judgment of $150.00 against respondents and in favor of complainant for the conversion of an air conditioning unit. It appears from the evidence that the unit was used in the office of Mikul-Wainwright Realty Company, a corporation, the entire stock of which was transferred and assigned to respondents. The trial court did not make any specific finding of fact that the unit was the personal property of the deceased Mikul. Having been found in the office of the corporation, in use there, we think a correct inference could be drawn that the unit was corporate property and remained the corporate property after transfer of the stock. If the transfer of the stock was effected to secure then present and prospective indebtedness to the respondents, complainant is not entitled to recover the value of the unit because the uncontradicted evidence shows that the indebtedness to respondents has not been fully paid.

No point was made in the lower court, nor here, that complainant maintains this suit in her individual capacity rather than in a fiduciary capacity. We pretermit any discussion, as did the trial court, of the correctness vel non of complainant's right to maintain this suit in her own name.

For error of the trial court in rendering judgment for $150.00 against respondents, and in fixing a vendor's lien on the real estate as we have noted above, the decree of the trial court should be reversed and the cause remanded, in order that the trial court may enter a decree in accordance with this opinion.

The foregoing opinion was prepared by B. W. Simmons, Supernumerary Circuit Judge, while serving on the Supreme Court at the request of the Chief Justice, and was adopted by the court as its opinion.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON, MERRILL, and COLEMAN, JJ., concur.