# Southern Railway Co. *v.* Williams.

*Action against a Railroad Company to Recover Damages for Personal Injuries.*

1. *Witness; impeachment; when proper predicate not laid.*—To authorize the introduction of contradictory statements for the purposes of impeachment, the witnesses to be impeached must be distinctly known and designated by the impeaching witness; and where in the trial of a civil action, two of the plaintiff's witnesses are asked whether they made certain statements, the time, place and circumstances being designated, for the purpose of laying a predicate for their impeachment, upon these witnesses denying the making of such statement, the testimony of one of defendant's witnesses that such statement was made by one of said witnesses in the other's presence, such impeaching witness being unable to designate which of said two witnesses made the statement, is incompetent, and neither of said witnesses can be impeached by such testimony.

2. *Jury and jurors; true verdict; manner of arriving at verdict.* A true verdict is a voluntary conclusion of the jury after deliberate consideration, and if a verdict returned is the result of any arbitrary rule or order, whether imposed by the jurors themselves, by the court or officer in charge, it is not such a verdict as should be sustained; and if in a damage suit the verdict rendered in favor of the plaintiff was arrived at by adding up the amount each juror thought should be given as damages, and dividing the total by twelve, such verdict is not a true verdict of the jury, and should be set aside.

3. *Same; when verdict should be set aside by reason of its irregularity; presumption in reference thereto.*—When, on a motion for a new trial in a damage suit, upon the ground that the verdict was arrived at in an improper and unauthorized manner, it is shown that on the back of a paper containing instructions given by the court to the jury, which was taken by them into the jury room and returned with the verdict, there appeared a memorandum showing twelve different amounts in a column, the total resulting from the addition of these amounts and its division by twelve, the quotient being the amount of the verdict returned, and it was further shown that such memorandum was not made when the paper containing it was delivered to the jury, the presumption arises that the verdict was the result of an agreement by the jurors themselves to average their separate assessments; and such a verdict, not being a true verdict, should be set aside and the motion for a new trial granted.

[Southern Railway Co. v. Williams.]

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

This was an action brought by the appellee, Henry Williams, against the Southern Railway Company, to recover damages for personal injuries, alleged to have been sustained by the plaintiff by reason of being thrown or forcibly ejected from one of its cars, by the conductor thereon, between stations, and while the train was being run at a high rate of speed. The facts pertaining to the question decided on the present appeal, are sufficiently stated in the opinion.

There were verdict and judgment for the plaintiff, assessing his damages at six hundred and two dollars. The defendant appeals and assigns as error the several rulings of the trial court to which exceptions were reserved.

SMITH & WEATHERLY, for appellant.—The court erred in not sustaining the objections to the question asked the witness Westmoreland, for the purpose of impeaching the witnesses White and Stephenson. The fact that the witness stated that he did not remember any such conversation would not, of itself, be an obstacle in the way of impeaching his credibility.—*Payne v. State*, 60 Ala. 80 ; 1 Thompson on Trials, § 490.

The motion for a new trial should have been granted. The manner in which the jury arrived at the verdict was improper, unauthorized and reprehensible. In *Haight v. Hoyt*, 50 Conn. 583, it is said : "The practice of juries marking severally the amount of damages which they individually were in favor of finding for the plaintiff, and dividing the aggregate of these amounts by the number of jurors, is a reprehensible one. A fair verdict, the deliberate opinion of the jurors upon the evidence, could scarcely in this manner be obtained. Some of the jurors would mark a much larger sum than their candid judgment would sanction, in order to make up the expected deficiency of others, and so the honest jurors would be deceived and a dishonest verdict obtained."— *Chicago & C. R. Co. v. McDaniels*, 32 N. E. Rep. 728 ; *Ward v. Board of Com.*, 29 Pac. Rep. 662 ; *Dixon v. Pluns*, 31 Pac. Rep. 931 ; *Hayden v. Lewis*, 52 Pac. Rep. 264 ; *Schofield v. Brunton*, 36 Pac. Rep. 1103 ; 28 Amer. & Eng. Encyc. of Law, pp. 271–275.

B. M. ALLEN, *contra.*—1. A witness may be impeached or contradicted by showing that at a certain time and place he made a different statement about a material matter connected with the case, but his attention must first be called to the time, place and statement, and the impeaching witness should be asked substantially in the language of the predicate.—1 Greenl. on Evidence, § 462.

2. An order denying a motion for a new trial on the ground that a verdict is not supported by the evidence will not be reversed unless, after allowing all presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to convince the court that it is wrong.—*Bray v. Ely*, 105 Ala. 553 ; *Cobb v. Malone*, 92 Ala. 630. A verdict on conflicting evidence will not be disturbed on appeal, though more witnesses testified for appellant than appellee. Weighing evidence does not consist merely in counting witnesses.—*Holloway v. Harper*, 108 Ala. 647.

COLEMAN, J.—There are only two questions presented by the assignments of errors which we regard as of any importance. On all other questions the rulings of the court clearly were correct. The first question for consideration relates to the action of the court in sustaining an objection to and excluding the answer of the witness Westmoreland, the purpose of which was to impeach the evidence of the witnesses White and Stephenson, by proving contradictory statements ; and the second question is in refusing the motion for a new trial, based upon the ground that "the verdict of the jury was arrived at in an improper and unauthorized manner." We will consider these questions in the order stated.

It seems that in some of the courts, a predicate is not required in order to admit evidence of contradictory statements, but with us, such evidence cannot be introduced without a proper predicate. The reason of the rule, it is said, is to prevent surprise, and to give the witness an opportunity to explain himself or the different statements, if such were made.—*Powell v. State*, 19 Ala. 577. The predicate is sufficiently laid when the attention of the witness is called to the time, place, and circumstances and persons involved, and the statements made ; but the rule is not iron-clad, that is, it does not require perfect precision as to either. When it is clear

that the witness cannot be taken by surprise, and ample opportunity is afforded to make any explanation desired, the predicate is sufficient to authorize proof of contradictory statements. The authorities are collected in 2 Brick. Dig. 548, §§ 117–121; *Nelson v. Iverson*, 24 Ala. 9. Another principle is, that a witness cannot defeat the introduction of contradictory statements offered for the purpose of impeachment, by stating "that he does not remember," and the like answers.—*Payne v. State*, 60 Ala. 80; *Brown v. State*, 79 Ala. 61.

The plaintiff had examined two witnesses, Stephenson and White, who testified to the circumstances of the injury, and whose testimony, with more or less force and relevancy, tended to show that Westmoreland forcibly ejected from, or ordered the plaintiff to jump off, a running train. The defendant offered to prove by Westmoreland that about a week or ten days after the injury occurred, these two witnesses were together on his train sitting in the same seat, and that he had a conversation with them relative to the injury. The witness Stephenson had been interrogated as to the conversation and was asked, if he did not say, he heard the conductor tell the plaintiff, not to jump off the train. The recollection of the witness Stephenson was not clear as to the conversation, but his best recollection was that he made no such statement.

On cross-examination the witness White testified as follows: "Remembered shortly afterwards riding on the train with the witness Stephenson, coming from Corona, and having a talk with Westmoreland about the accident. Witness did not remember what was said in that conversation. Witness did not remember Westmoreland asking him or asking Stephenson in witness's presence what it was that the conductor told Williams, and did not remember the conductor asking the witness or Stephenson or both of them, if he (the conductor) did not tell Williams 'not to jump off.' Witness was not aware of and did not get the impression, that Stephenson told Westmoreland, that he, Stephenson, heard Westmoreland tell Williams not to jump off. Witness remembered on that occasion the conductor, Westmoreland, taking out his book and taking his and Stephenson's names, stating that he might need them as witnesses."

For the purpose of impeachment, the defense offered

to prove by the witness Westmoreland that on the occasion of the conversation on the train, the witnesses Stephenson and White were sitting together on the same seat, that he addressed them together, not particularizing the one more than the other. He was then asked this question : "Did you say in Mr. White's presence and hearing, while he was sitting there with Stephenson, anything about what you said to Williams (plaintiff), and did White say, or did Stephenson say in White's presence, that he heard you tell Williams 'not to jump off the train?' " The court sustained an objection to this question. The court also sustained an objection to the question, "Did either one of them tell you that they heard you tell Williams not to jump off?" The defendant reserved an exception in both instances.

The impeaching witness could not remember and did not say which of the two witnesses, White or Stephenson, made the statement. The most that he would say was, that either White or Stephenson made it. To authorize the introduction of contradictory statements for the purposes of impeachment, the witness to be impeached must be definitely known. Certainly both were not subject to impeachment under the predicate laid. It was incompetent as to one, and as defendant was unable to show to which one of the two the impeaching testimony applied, the court properly excluded it altogether.

After verdict, the defendant moved the court for a new trial, basing the motion upon the grounds, "that the verdict was contrary to the weight of the evidence," and that the damages allowed were unreasonable. The evidence greatly conflicted both as to plaintiff's right to recover, and as to the extent of his personal injury. There was evidence which, if credible, authorized the finding of the jury. Upon the facts we are unable to say the court erred in refusing the motion based upon either of these grounds.

The 5th and 6th grounds of the motion for a new trial were, that "the verdict of the jury was arrived at in an improper and unauthorized manner," and "that the verdict was arrived at by adding up the amounts each juror thought should be given as damages, and dividing the sum so found by twelve." In support of the motion on the latter grounds, the movant introduced in evidence, a pencil memorandum on the back of a paper, contain-

ing a portion of the written instructions given to the jury by the court, and which they carried with them, upon retiring from the court room to consult about their verdict. The pencil memorandum showed twelve different amounts, ranging from twenty-five dollars to fifteen hundred dollars, each number under the other; also the total of all the amounts, and its division by twelve. The result of the sum total divided by twelve, set down, and the quotient thus ascertained, corresponded with the verdict of the jury. It was proven that when the jury returned into court with their verdict, the paper with the memorandum, with the other papers in the case, was received from the foreman, by the deputy clerk, who thus noticed that the pencil memorandum referred to had been put on the back of the paper.

A true verdict is the voluntary conclusion of the jury after deliberate consideration, and it is none the less a true verdict, because the respective jurors may have been liberal in concessions to each other, if conscientiously and freely made. A verdict is not a true verdict, the result of any arbitrary rule, or order, whether imposed by themselves or by the court, or officer in charge. If a jury should agree in advance that their verdict should be the result or quotient of a division by twelve of the sum total of all the jurors' separate assessment, a verdict brought about by such an agreement, ought to be set aside. The principle is very fully discussed in 28 Am. & Eng. Encyc. of Law, pp. 267–272, and notes.

Some of the amounts are placed as low as twenty-five dollars. Others range to fifteen hundred dollars. If jurors should bind themselves to return a verdict, the result of such a method, it is apparent that one or two jurors, by resorting to extremes, could force an unfair verdict.

The question for determination by the court is, whether under the rules we have declared, a reasonable and satisfactory presumption arises from the facts stated, that the verdict in the case was the result of such an agreement. It is insisted that there is no evidence that the memorandum was made by the jury, and it is further insisted, that the memorandum may have been made after the verdict was agreed upon. These are possible conclusions, but they are not probable or reasonable. The memorandum was not made, when the paper was

40

[Crenshaw County v. Sikes.]

delivered to the jury. No one had any right to the papers but themselves. It was made before the jury parted with the possession, and was in the hands of the foreman, and returned by him with the verdict into court. A conclusion, that the memorandum was made by any person other than a juror, or made after the jury had agreed upon their verdict, or that the verdict was not the result of an agreement, requires too great a draft upon human credulity. We are of opinion that the verdict was not a true verdict, and should have been set aside. An order will be here made to that effect, and the cause remanded.

Reversed and remanded.

BRICKELL, C. J., dissenting.