304 So.2d 573

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**
a corporation

v.

**Dexter V. HUMPHRES, as Admrs., etc.**

**SC 829.**

Supreme Court of Alabama.

Dec. 5, 1974.

Tweedy, Jackson & Beech, Jasper, for appellant.

Guin, Bouldin & Porch, Russellville, and Vinson & Guyton, Hamilton, for appellee.

MERRILL, Justice.

This is an appeal by the State Farm Mutual Automobile Insurance Company (defendant-appellant) from a verdict on an insurance policy in favor of Dexter V. Humphres (plaintiff-appellee), as administrator of the estate of Dexter G. Humphres, deceased.

The undisputed evidence shows that deceased and one Ray James agreed to go to the Fulton Drag Strip in Mississippi to drive James' high-powered automobile. They decided that the faster driver, as determined by the speedometer on the car, would drive the car at a race to be held the following Sunday. The Fulton Drag Strip is a regular quarter-mile strip. Dexter G. Humphres was traveling approximately 120 miles per hour when the car left the drag strip and struck a tree, cutting the car in half and killing the driver. Ray James was the only other person present at the drag strip at the time of the accident.

The policy sued on in this case had an exclusion which limited the liability of the company. The policy, in pertinent part, provides:

"Insuring Agreement IV does not apply:

" *  *  *

"(E) To bodily injury sustained while occupying (i) any vehicle being used for racing  *  . *  *."

Assignments of error 1, 2, 3, 4, 16, 17, 20, 21 and 22 raise the same question in various ways—the application of the quoted exclusion clause in the policy to the facts in the instant case.

Appellant contends that this competition was in fact a race within the meaning of the exclusion. It argues that even though there was no competition from another motor vehicle, "This was a race against speed, or a race to see which one could get over the dragstrip the fastest and in the shortest time, and the prize was that the one that could do it would get to drive the car in the race the next Sunday." In support of this proposition, appellant relies upon Alabama Farm Bureau Mutual Casualty Insurance Co. v. Goodman, 279 Ala. 538, 188 So.2d 268, where it was held that a race between automobile and bicycle came within the language of an exclusionary clause covering a "competitive speed test."

The last three quoted words are important. The exclusion in *Goodman*, su-

pra, was "if the injury or damage is caused by an automobile race or competitive speed test." In that case, the court said: "The sole question for decision is whether the race between the automobile and the bicycle was a 'competitive speed test.'" After a discussion of the law and facts, the court stated:

"There is no uncertainty or ambiguity in the words 'competitive speed test' and giving the words their common interpretation as people with ordinary understanding would construe them, we are convinced that the stipulated facts in this cause show that Goodman was engaged in a competitive speed test and the Goodman automobile was without the coverage of the policy when the accident happened."

The holding in *Goodman* was limited to a "competitive speed test" and those words do not appear in the exclusion in the instant case. That is one of the distinctions between *Goodman* and the instant case.

Here, the exclusion applied to "any vehicle used for racing."

Couch on Insurance 2d, § 42.566, reads:

"A provision exempting the insurer from liability while the insured car, a racing or sporting model, was engaged in 'racing or pacemaking, or reliability or speed or other trial' does not apply where the car is burned while running at a high speed during the testing thereof to determine its efficiency or capacity for entry into an automobile race, the theory being that the quoted words applied only to a competitive or organized and supervised race or test."

In Maringer v. Bankers Indemnity Insurance Co., 288 Ill.App. 335, 6 N.E.2d 307, the court construed the word "used" as it was employed in an automobile liability policy. In that case, the insurance carrier denied liability under a provision which excluded coverage if one of the insured automobiles "will be used to carry passengers for a consideration, actual or implied." The evidence was that the driver of the vehicle at the time of the accident, who was a brother of the named insured, had picked up some personal friends and several young ladies at a dance hall and charged some consideration for the trip. The insurer pointed out that they had lost their defense under Illinois' Guest Passenger Act and the risk to them of judgment was substantially increased. The court quoted the language of the Court of Civil Appeals of Texas in the case of Commercial Union Assurance Company v. Hill, 167 S.W. 1095, which said:

"* * * The words 'that the automobile hereby insured during the term of this policy shall not be used for carrying passengers for compensation,' etc., were intended to mean that the automobile should not be continuously used for that purpose for any length of time, or, in other words, the owner should not make a business of using said automobile for carrying passengers for hire, and it was evidently never contemplated that the casual use of it as made in this instance would work a forfeiture of the policy. * * *"

The Illinois court then quotes decisions from Rhode Island, North Carolina, Illinois and Pennsylvania, and concludes:

"* * * 'Used,' as it appears in declaration II of the policy, according to the authorities above quoted supporting this view, means a continued or business use, and the facts in the case at bar do not indicate that the Ford automobile was used for the carriage of passengers for hire, either express or implied, and the evidence does not support the defendant's theory that the Maringer automobile was used on the night in question for that purpose. * * *"

In Treolo v. Auto Insurance Underwriters, 348 Ill. 93, 180 N.E. 575, the Supreme Court of Illinois construed a provision in an automobile liability policy

which excluded coverage if the automobile "is being used for transporting intoxicating liquor." The insured had a jug of wine in the automobile at the time of the collision. The court, after considering the possible definitions of the word "used," followed the doctrine of liberal construction in favor of the insured to afford the insured protection by construing the exclusion as meaning engagement in the business of transporting intoxicating liquor.

Couch on Insurance 2d, § 42.564, states the rule as follows:

"For a prohibited or excluded use of a vehicle to avoid liability, it must be shown that it is more than a temporary or incidental use. * * *"

We conclude that a reasonable construction of the exclusion, "any vehicle used for racing," does not bar coverage under the facts of this case. There was no race in progress at the time the injury occurred.

Assignments 24 and 25 charge error in the sustaining of objections to the following questions to the witness, Ray James, who had described the automobile as a Charger 440, with a 375 engine:

"Is that (375 horsepower) the normal horsepower, or is that extremely high horsepower?;

"Will you explain what horsepower has to do with the speed of an automobile?"

At this point in the trial, the witness had not been qualified as an expert. Furthermore, he was allowed to testify without objection that when he last saw the automobile it was traveling "around 120 or 125 miles an hour." There was no prejudice in the ruling of the court on the two questions.

Assignment 27 charges error in the sustaining of objections to a question to Ray James, the owner of the car: "What did you use that car for?" Appellant states in brief that he wanted to bring out "whether or not this car was one that was used for racing." Assuming, without conceding, that the question was proper, there was no prejudicial error, because the preceding question—"Had you driven that car from time to time in various races?" was answered "Yes" without objection.

Assignment 23 charges error in the admission of a check for $33.40, payable to State Farm, dated 2/4/69 and signed by Dexter Humphres, the deceased. The father of Dexter Humphres was the witness, and he had testified that he and his son went to the office of Frank Arnold, the agent of State Farm, to secure insurance on his son's automobile. The policy was contracted for. His son, Dexter Gene, signed the check and the check was drawn on the son's account. It was endorsed by State Farm. The check was then offered in evidence. Appellant objected on the ground that it violated the "dead man's statute" (Tit. 7, § 433, Code 1940) because Frank Arnold, the agent, was dead. During the colloquy, counsel for *State Farm* was asked if he wanted to ask the witness "anything on voir dire about this?" His answer: "Yes; was that check given to Mr. Arnold there in his office?" The witness answered: "That check was either given to him or mailed to him. I'm not sure."

The dead man's statute, Tit. 7, § 433, provides " * * * that no person having a pecuniary interest in the result of the suit or proceeding shall be allowed to testify against the party to whom his interest is opposed, as to any transaction with, or statement by, the deceased person whose estate is interested in the result of the suit or proceeding, or when such deceased person, at the time of such transaction or statement, acted in any representative or fiduciary relation whatsoever to the party against whom such testimony is sought to be introduced, unless called to testify thereto by the party to whom such interest is opposed, * * *."

■ The statute has no applicability here. The extent of the testimony adduced by plaintiff was that the witness and his son went to the dead man's office and talked with him about the policy and that the dead man was the agent of the defendant. No particulars of this conversation were admitted. The witness testified that the check in payment of the premium was paid by his son and he identified his son's signature. But the check was not payable to the agent, but directly to the defendant, State Farm. The policy, plaintiff's Exhibit 1, shows Frank A. Arnold, the dead man, as the authorized representative, and the policy shows the semiannual premium to be $33.40. All of this evidence was admissible. The only particulars of any "transaction" with the dead man was elicited by the defendant when counsel for *defendant* asked if the check was given to Mr. Arnold in his office and the answer was that it was either given to him or mailed to him.

■ The rule is that a party may not avail himself of error, if any, into which he has led the court; that is called "invited error." Thompson v. Magic City Trucking Service, 275 Ala. 291, 154 So.2d 306; Dixie Highway Express, Inc. v. Southern Railway Co., 286 Ala. 646, 244 So.2d 591. We are not to be understood as intimating that the trial court erred in its ruling as to admissibility of the check.

■ Assignments 31, 32 and 33 charge error in the sustaining of objections to three questions propounded by defendant to its witness, B. J. Kelly, District Manager of State Farm, on direct examination:

"Do you know whether or not they (State Farm) write any policies of insurance covering any race cars?"

"Do you know whether or not the Defendant in this case insures any race cars being used for racing under liability coverage . . . ."

The third question was more involved but of the same import.

The objections were properly sustained. This was a suit on a particular policy, admittedly issued by State Farm. Also, it was not shown that the witness was familiar with the nationwide policies of State Farm.

■ Assignment 34 charges error in the sustaining of objections when appellant attempted to introduce three applications for insurance with appellant by three different people who were not parties to or involved in the instant suit or in the issuance of the policy which is the basis of the instant suit. We fail to see the relevancy of this evidence.

■ The determination of whether particular evidence is relevant is largely within the discretion of the trial court. Bradley v. Jones, 282 Ala. 331, 211 So.2d 465; Stonewall Ins. Co. v. Lowe, 291 Ala. 548, 284 So.2d 254. We find no abuse of discretion in the trial court's ruling.

■ Appellant charges error separately in the refusal to give seven requested written charges. Three were concerned with whether the insurance policy insured the plaintiff's father or his deceased son. The other four were concerned with the defense that the automobile was "used for racing" when the accident occurred. These charges were amply covered in the court's oral charge.

The refusal of requested charges is not error where the court's oral charge substantially covered the same principles as the refused charges. Turner v. Blanton, 277 Ala. 536, 173 So.2d 80; Norris v. Presley, 292 Ala. 155, 290 So.2d 643.

Affirmed.

All the Justices concur.