374 So.2d 325 (1979)
STATE of Alabama
v.
Kenneth L. STEELE and Mary P. Steele.
78-478.
Supreme Court of Alabama.
August 31, 1979.
*326 Richard H. Dorrough, Sp. Asst. Atty. Gen., Montgomery, for appellant.
W. H. Rogers, Moulton, for appellees.
BEATTY, Justice.
The State of Alabama appeals from a final judgment of $160,000.00 entered in favor of Mr. and Mrs. Steele, the defendants in this condemnation proceeding. We affirm.
The State initiated the proceeding by filing a petition in the Probate Court of Lawrence County to condemn some 18.7 acres of defendants' land for use as a part of a highway right-of-way. The award of the commissioners appointed by the probate court was $134,500.00 and a judgment of condemnation was entered in that amount. The State then appealed to the Circuit Court of Lawrence County where the sole question was the amount of damages to be awarded the Steeles. After a trial de novo, the jury returned a verdict that allowed defendants $160,000.00 compensation for the condemned land. Judgment was entered accordingly and the State's motion for a new trial was subsequently denied by the trial court. On this appeal the State contends that the trial court erred in refusing to grant its new trial motion. We disagree.
The record reveals that prior to the State's exercise of its right of eminent domain Mr. and Mrs. Steele were the owners of a 79-acre tract of land near Moulton. The property taken consisted of 18.7 acres of improved land, leaving defendants with 60.3 acres. The taking included defendants' five-year-old brick veneer home, a garage, a dog kennel and a barn. Other improvements, including fencing, barns and ponds, were adversely affected by the loss of the homesite and the division of the property which was made necessary by the condemnation.
At the trial the State called two expert appraisers as witnesses. Each of them had conducted an independent appraisal of the condemned property. One of these, Alvin Johnson, found that the land defendants had owned before the taking was worth $106,500.00 more than the property they were left with after the taking. The State's other appraiser, Robert Trousdale, concluded that the defendants had sustained a loss of $103,600.00 because of the *327 condemnation. It should be noted that both appraisal witnesses for the State based their calculations on a total taking of the building used as a residence, which before the condemnation had an estimated value of between $59,000.00 and $80,000.00. The fact that Mr. and Mrs. Steele subsequently repurchased the house from the State for $6,500 and relocated it on a part of the land they continued to own was not considered by the State's experts in computing the extent to which the Steeles were damaged.
The defendants also called two independent appraisers, Billy Glenn Terry and Arnold Gordon, to testify to the value of the condemned property. They both had served as commissioners in the proceeding in the probate court, and at trial they adhered to their prior determination of the loss to the Steeles, i. e., roughly $134,500.00. The Steeles themselves estimated that by virtue of the condemnation they had been damaged in the amount of $206,290.00.
At the conclusion of the evidence, the trial court gave an extensive oral charge to the jury setting out the general law of valuation in condemnation cases. At the defendants' request, the court further instructed the jury that in determining the damages (if any) to be awarded to defendants, it could not consider the evidence in the case concerning defendants' post-condemnation repurchase of the house taken by the State. The jury returned a verdict awarding the Steeles $160,000.00 as compensation for the condemnation of their property.
At the hearing held on the State's motion for a new trial one of the jurors was called to testify about the jury's deliberation process. That juror, Lyndon Parker, testified that the members of the jury had discussed the various values that were placed on the condemned property by the witnesses at trial and had concluded that the highest value was too high and the lowest was too low. The jurors had then agreed that they would add the two figures together, divide by two, and return a verdict in that amount. Several of the jurors made the calculations, and the figure agreed on was $160,000.00, the amount that was actually awarded. After Mr. Parker's testimony, the motion for a new trial was denied.
On this appeal, the State first contends that the trial court erred in charging the jury that it could not consider the evidence elicited concerning the Steeles' repurchase of their home. It is asserted that that evidence was relevant in that it tended to prove a benefit to the defendants arising out of the condemnation because the $6,500 price at which the Steeles repurchased the property was substantially lower than the precondemnation values placed on the house by the witnesses at trial. We are urged to reverse this cause on the ground that the trial court's evidentiary rulings (excluding evidence of circumstances surrounding the repurchase) and the exclusionary charge "usurped both the rights of the State to present evidence as to possible benefits derived from the condemnee's purchase and of the jury to consider or not consider such value in its award."
As a general rule, the determination of whether particular evidence is relevant is reposed within the sound discretion of the trial court. State Farm Mutual Automobile Insurance Co. v. Humphres, 293 Ala. 413, 304 So.2d 573 (1974). In this case we do not think that the trial judge abused that discretion by refusing to allow into evidence testimony concerning the defendants' repurchase of the house. Nor was it error to refuse to permit the jury to consider the evidence that was admitted at trial regarding the repurchase for the record clearly shows that the conveyance of the house from the State back to the Steeles occurred after the entire property already had been condemned.
Counsel for the State argues in brief that the rule enunciated in State v. Huggins, 280 Ala. 538, 196 So.2d 387 (1967), mandates the reversal of this cause. There it was said that
[A] condemnee should not be compensated by the condemnor for the full value of a residence which the condemnor does not destroy or appropriate, but which remains *328 the property of the condemnee after the filing of the application for condemnation and which is removed by condemnee to other lands owned by him.... [Emphasis added.] [280 Ala. at 542, 196 So.2d at 391.]
Although we accord verity to that statement of principle, it has no application to this case, for the evidence is clear that the Steeles' residence was in fact wholly appropriated by the State; the house did not "remain the property of the condemnee" after the petition to condemn was filed, but instead it became the property of the State. Nothing in the record connects the later purchase to the condemnation proceeding itself. For that reason, the trial court erred neither in excluding evidence regarding the circumstances surrounding the repurchase nor in instructing the jury to disregard the repurchase evidence that was admitted.
The State's second contention is that the trial court erred in not granting its motion for a new trial on the ground that the jury rendered what is termed a "quotient verdict." This contention, however, is not well taken; it reflects an apparent misapprehension on the part of counsel of the essential rationale underlying our disapproval of verdicts reached by a quotient method. Although it is true that quotient verdicts must be set aside, in this case the testimony of juror Parker affirmatively shows that (1) the verdict of the jury was not a quotient verdict in the legal sense, and (2) the process by which the verdict was reached was not susceptible to the evils our decisions have remedied by rejecting quotient verdicts.
At the outset it is perhaps in order to distinguish between a "quotient verdict" and a verdict reached by a process of compromise. In Security Mutual Finance Corp. v. Harris, 288 Ala. 369, 261 So.2d 43 (1972), this Court stated:
In order for there to be a quotient verdict the members of the jury must agree (1) that each juror will specify the figure he recommends and that all figures will be added together and the sum divided by the number of jurors, and (2) that all the jurors will be bound by, and accept as their verdict, the quotient thereby obtained.... [Emphasis added.]
A verdict reached by such a method has been termed to be "in the nature of a gambling verdict; one wherein the juror morally commits to a verdict subject to be increased or decreased by any juror naming a high or low amount for the purpose of controlling the average to be written as a verdict." See Security Mutual Finance Corp. v. Harris, supra; Ewart v. Cunningham, 219 Ala. 399, 122 So. 359 (1929). It is apparent that a verdict reached by a quotient method has the potential to suppress the effect of a particular juror's judgment on the amount that is finally awarded; due to his prior commitment to accept the figure representing the average of the separate, individually-determined figures, the juror may be forced to adopt as his own a verdict that is not in fact his own. The basic policy underlying the rule against quotient verdicts was adequately summarized in Southern Ry. Co. v. Williams, 113 Ala. 620, 21 So. 328 (1897), where this Court stated:
If jurors should bind themselves to return a verdict, the result of such a [quotient] method, it is apparent that one or two jurors, by resorting to extremes, could force an unfair verdict.
On the other hand, we have no difficulty in upholding a verdict reflecting a process involving some compromise by the members of the jury, so long as it appears that the verdict rendered was in fact the jury's true verdict. As this Court pointed out in Southern Ry. Co. v. Williams, supra:
A true verdict is the voluntary conclusion of the jury after deliberate consideration, and it is none the less a true verdict, because the respective jurors may have been liberal in concessions to each other, if conscientiously and freely made.... [Emphasis added.]
Mr. Parker's testimony in this case merely shows that the jurors, after some deliberation, all agreed that a fair figure could be determined by dividing by two the sum of *329 the highest and lowest values attributed at trial to the condemned property. Obviously, the figure reached was a "compromise" of sorts, but the process utilized was in no respect subject to the risk that any one of the jurors could have unduly influenced the final outcome by naming an extremely high or extremely low figure.
It is also worthy of comment that the State was attempting to utilize the testimony of Mr. Parker to impeach the verdict rendered by a jury of which he had been a member. If his testimony had tended to impeach the verdict as a quotient verdict, it would not have been admissible, for the rule in this jurisdiction is that "neither testimony nor affidavits of jurors are admissible to impeach their verdicts." E. g., Maring-Crawford Motor Co. v. Smith, 285 Ala. 475, 233 So.2d 484 (1970).
The State's final argument is that the verdict of the jury was excessive under the evidence. Counsel emphasizes in brief that the $160,000.00 verdict exceeds the $134,500.00 damages figure testified to by the condemnees' experts. We are of the opinion, however, that such an action on our part would place undue weight on the expert testimony given at trial in condemnation cases.
It is well-settled that any person, including a layman, is competent to testify to his opinion concerning the value of land if he has had an opportunity for forming a correct opinion and testifies in substance that he has done so. State v. Woodham, 292 Ala. 363, 294 So.2d 170 (1974). The owner of land, by virtue of his ownership, is considered prima facie qualified to testify to its value without any further showing. Shelby County v. Baker, 269 Ala. 111, 110 So.2d 896 (1959).
In this action Mr. Steele, the defendant-condemnee, testified at length and in some detail to the item by item value of his property before the taking and the value of his remaining property after the condemnation. Mr. Steele estimated that the pre-condemnation value of his property was $331,590.00; his opinion of its value after the taking was that it had a fair market value of $125,300.00. The difference between the two is $206,290.00, which he claimed as damages. It is clear from the record that Mr. Steele's testimony was supported by a probative basis other than familiarity arising out of ownership and that a reversal by us based upon excessiveness would be an invasion of the province of the jury. As this Court recently stated in State v. Central of Georgia Railroad Co., 293 Ala. 675, 309 So.2d 452 (1975), quoting from Roundtree Farm Co. v. Morgan County, 249 Ala. 472 at 476, 21 So.2d 346:
"In condemnation cases there is often, as here, a wide divergence of opinion of witnesses as to values and items of damages. Claims by the property owner are sometimes exaggerated, and on the other hand are frequently minimized by the condemnor, both usually acting in good faith. The jury trying the issue must arrive at its verdict by reconciling the various opinions as best it can, and must analyze the evidence in the light of its common knowledge." ...
Because we are unconvinced that the evidence elicited concerning the process used by the jury in reaching a verdict is sufficient to rebut the presumption in favor of that verdict (as counsel for the State would have it), we must give great weight to the jury's conclusion. State v. Colley Corporation, 295 Ala. 204, 326 So.2d 120 (1976). The presumption in favor of the verdict is further strengthened by the trial court's action in refusing to grant the State's motion for a new trial. See, e. g., Merchants Bank v. Cotton, 289 Ala. 606, 269 So.2d 875 (1972). Because we find that the verdict was supported by competent evidence, we cannot say that the trial court erred in denying the motion for a new trial. Accordingly, this cause must be, and is, affirmed.
AFFIRMED.
TORBERT, C. J., and MADDOX and SHORES, JJ., concur.
JONES, J., concurs specially.
*330 JONES, Justice (concurring specially):
I agree with the opinion of the Court in all its aspects except for the statement, "... the determination of whether particular evidence is relevant is reposed within the sound discretion of the trial court." Rules of evidence are far too definitive to justify any field of operation for a discretionary rule with respect to admissibility of evidence. In other words, the trial Court did not err in excluding evidence of the property owners' subsequent repurchase of the dwellingnot as a matter of judicial discretion, but because the rules of evidence clearly support the trial Court's ruling. There may be a very limited field of operation for judicial discretion in evidentiary matters (e.g., cumulative testimony), but not so in the "relevancy" context here presented.