Rel: June 5, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2025-2026

_____

## CL-2025-0707

_____

## Monroe County Board of Education

## v.

## Barbarietta Turner-Pugh

## Appeal from the Decision of the Students First Act Hearing Officer
## (2025 100)

FRIDY, Judge.

The Monroe County Board of Education ("the Board") appeals from the decision of a hearing officer appointed pursuant to the Students First Act ("the SFA"), § 16-24C-1 et seq., Ala. Code 1975, reversing the Board's decision to terminate the employment of its tenured employee, Dr.

Barbarietta Turner-Pugh ("Pugh"). For the reasons set forth herein, we reverse.

## Background

On December 19, 2024, Monroe County school superintendent Gregory L. Shehan ("the superintendent") issued a written notification to Pugh that he was recommending the termination of her employment as director of student services based on allegations of failure to perform her duties in a satisfactory manner, incompetency, insubordination, and other good and just cause. The notice advised Pugh that she had a right to request a termination hearing and that, upon timely written notice from her, the Board would provide her with written notice of the date of the hearing.

On December 20, 2024, Pugh submitted a timely written request for a termination hearing. On December 26, 2024, pursuant to the SFA, she submitted a written notice of contest demanding all procedural protections afforded by law, stating that her attorneys would be notifying the superintendent of their appearances, and requesting that any further correspondence be directed to her attorneys. Pugh did not identify any attorneys by name in her written notice.

2

When Pugh requested the hearing before the Board, she was already involved in an employment-discrimination action ("the federal case") in the United States District Court for the Southern District of Alabama against the Monroe County School System, the Board, and the Board's members in their official capacities. Pugh was represented in the federal case by Christine Hernandez and other attorneys in her law firm. The attorneys who represented the superintendent in this case, Mark Boardman and Katherine Watkins, also served as counsel for the Board and its members in the federal case.

In a letter dated January 3, 2025, the superintendent notified Pugh that the Board had set the termination hearing for February 6, 2025. The letter advised Pugh of her rights under the SFA; established prehearing procedural deadlines that required submission of witness lists, exhibits, and subpoena requests by January 27, 2025; and provided that the superintendent's anticipated witness list and exhibits would be produced by the same deadline. The letter asked Pugh to provide an e-mail address for her or her attorney for service of materials.

On January 6, 2025, attorney Leston C. Stallworth, Jr., sent written correspondence to the superintendent, copying the

superintendent's counsel, Boardman, advising that he represented Pugh in connection with the proposed employment-termination matter. The letter expressly instructed that "[a]ll correspondence regarding [that] matter should be directed to [him]." On the same date, Hernandez transmitted correspondence to the Board's counsel, Watkins, regarding scheduling depositions in the federal case and identifying multiple potential deposition dates, including February 7, 2025 ("the deposition-scheduling letter").

Although Pugh did not file a written motion to continue the termination hearing, Boardman, as attorney for the superintendent, and Stallworth, as attorney for Pugh, engaged in telephone discussions concerning the scheduling of the termination hearing and reached an agreement to continue the hearing by one day, to February 7, 2025, and the Board agreed to the change. On January 15, 2025, the superintendent sent a letter and an e-mail to Stallworth confirming that Stallworth had requested a change of the February 6, 2025, termination-hearing date, "citing a potential conflict with [his] co-counsel." The superintendent further stated that Stallworth's unnamed co-counsel (presumably Hernandez) had sent correspondence to Boardman and Watkins stating

4

that February 7, 2025, was available on her calendar and that, based on those communications, Stallworth and Boardman had agreed to move the termination hearing from February 6 to February 7, 2025. The correspondence confirmed that the termination hearing would proceed on February 7, 2025, and adjusted the prehearing disclosure deadline from January 27 to January 28, 2025. The superintendent also noted that Stallworth was the only attorney from whom he had received written notice of representation and that, consistent with Stallworth's instruction that all communications be directed to him, he had sent the correspondence only to Stallworth.

It appears that sometime between January 20 and January 27, 2025, Stallworth sent an e-mail to the superintendent that is not contained in the record; however, the record does include the superintendent's January 27, 2025, response to that e-mail explaining that a snow emergency and school closures since January 20, 2025, had delayed the superintendent's reply. In the response, the superintendent explained to Stallworth that the Board could not reschedule the termination hearing to March 2025 and that Stallworth had indicated that February 7, 2025, accommodated his calendar. The superintendent

enclosed the deposition-scheduling letter from Hernandez to Board attorney Watkins that proposed February 7, 2025, as a potential date for depositions in the federal case, and the superintendent stated that the Board had already moved the termination hearing from February 6 to February 7, 2025, at both Stallworth's and Hernandez's request.

On January 30, 2025, Boardman e-mailed both Hernandez and Stallworth stating that he had received Stallworth's January 6, 2025, letter of representation and Hernandez's deposition-scheduling letter of the same date referencing her availability on February 7, 2025, for depositions in the federal case. Boardman stated that the termination hearing had originally been set for February 6, 2025, and that, after discussions with Stallworth, he had agreed to move it to February 7, 2025, because of a conflict Hernandez had with the February 6, 2025, date. He further stated that the Board was required to hold the termination hearing in February and that he and Stallworth had also considered February 20, 2025, but that date had not been agreeable. Boardman explained that, because Hernandez had indicated February 7 was available in her deposition-scheduling letter and because he and

Stallworth had agreed to move the hearing to that date, the termination hearing would remain scheduled for February 7, 2025.

On February 3, 2025, Boardman sent an e-mail to Hernandez responding to an inquiry she had apparently made regarding the date of the termination hearing.[1] In the e-mail, Boardman wrote that he did not set, and could not unilaterally set, the termination-hearing date under the SFA and that the hearing date had been set by the Board itself. He explained that the termination hearing had already been moved with the agreement of Pugh's "sole attorney," Stallworth, who had notified him in writing that he represented Pugh in the termination proceeding and that he had sent Hernandez that letter of representation "earlier." Boardman further stated that Stallworth had instructed that all correspondence be directed to him and that he had complied with that instruction by sending

---

[1]The information about the communications between the parties is derived from copies of the letters appearing in the record on appeal as attachments to briefs that they filed with the hearing officer who presided over Pugh's appeal from the decision of the Board to uphold the superintendent's recommendation to terminate her employment. Although the record on appeal does not contain a copy of the communication from Hernandez that Boardman referenced in his February 3, 2025, e-mail to Hernandez, an attorney of Pugh's in a different matter attempted to provide a copy of that letter to this court as an attachment to an amicus brief she sought to file with this court. This court denied that attorney's request to file her amicus brief.

Stallworth a letter confirming that the termination-hearing date had been moved to February 7, 2025. He further stated that Pugh could not "create" a scheduling conflict by changing attorneys and that, because the Board had originally reserved February 6 and 7, 2025, for the termination hearing, the matter remained set for February 7, 2025.

On February 7, 2025, the Board convened the termination hearing to consider Pugh's contest. The record reflects that Boardman prosecuted the superintendent's recommendation for termination, while the Board retained separate counsel to advise it on related legal issues and to prepare any written order the Board issued after the hearing. According to the record, one Board member, identified as Pugh's mother, recused herself from the termination proceeding. Pugh did not appear at the termination hearing, and no attorney appeared on her behalf.

At the outset of the termination hearing, Boardman advocated that the hearing proceed without Pugh. He told the Board that Pugh had been represented by at least four attorneys in connection with the termination of her employment and that he had had contact with three of them. He explained that Stallworth was the attorney who initially contacted him in this matter and that the Alabama Education Association had retained

8

Stallworth to represent Pugh. Boardman explained that, as far as he knew, Stallworth was available for the February 7, 2025, termination hearing. Boardman further explained that the Board had originally set the termination hearing for February 6, 2025, had held February 7 in reserve in the event an additional day was needed, and had moved the hearing to February 7 after discussions with Stallworth and in light of communications referencing the parties' availability on that date. He said that, when Pugh's counsel had requested a change of the termination-hearing date, he had consistently advised that he lacked the authority to move the termination hearing because it was set by the Board. Boardman argued that no formal request to continue the termination hearing had been filed and requested that the hearing proceed because proper notice had been provided.

The Board's advisory counsel advised that the SFA requires the termination hearing to be set within thirty to sixty days of the employee's request for a hearing and probably prohibited any continuance that would extend the proceeding beyond that statutorily prescribed period.[2]

---

[2]Actually, the SFA provides that "the hearing shall be set by the employer not less than 30 and not more than 60 calendar days from the

He further explained that the SFA required the Board to conduct a termination hearing once requested, but did not require the employee to be present, to be represented, or to present evidence in order for the hearing to proceed. He advised that all the required participants were present and that the absence of Pugh or her counsel did not relieve the Board of its statutory obligation to proceed with the termination hearing and to render a decision.

The Board proceeded with the termination hearing in Pugh's absence and received testimony and documentary evidence. At the conclusion of the termination hearing, the Board voted to adopt the superintendent's recommendation to terminate Pugh's employment. On February 7, 2025, the Board issued a written notice to Pugh of its decision and informed her of her right to appeal within fifteen days, pursuant to the SFA. Pugh timely appealed, asserting that her attorney had contacted the Board in advance and had requested a new hearing date because of a scheduling conflict, that she did not receive notice of the rescheduled termination-hearing date, and that she appeared at the

---

date written notice of the time, date, and place of the hearing is issued to the employee ...." § 16-24C-6(b), Ala. Code 1975.

Board office on February 6, 2025, in reliance on the original notice, only to be told that no hearing would occur that day and that no new hearing date had been provided. She further contended that she had been denied the opportunity to present evidence, examine witnesses, or otherwise defend against the allegations underlying her termination.

On August 13, 2025, the date set for the hearing on Pugh's appeal, the Board filed two briefs with the hearing officer assigned to consider Pugh's appeal. One addressed the issue of Pugh's alleged lack of notice of the February 7, 2025, termination hearing. The Board asserted in that brief that Pugh had received clear and repeated notice of the February 7 date and that communications had been properly directed to Stallworth, consistent with his instruction that all correspondence be routed to him. It further asserted that the hearing date had been rescheduled from February 6 to February 7, 2025, at Stallworth's request, that the superintendent had confirmed the rescheduled hearing date in writing on January 15, 2025, and that the parties had consistently referenced February 7 as the operative date in subsequent communications. The Board contended that Pugh's failure to appear was voluntary and did not constitute a due-process violation because she had notice and an

opportunity to be heard and that the decision not to participate in the hearing reflected a strategic choice that did not invalidate the outcome of the hearing.

At the August 13, 2025, hearing on Pugh's appeal, Hernandez appeared on behalf of Pugh and argued that her initial communication regarding Pugh's representation was with Stallworth on January 6, 2025, and that they intended to work together on the matter. She argued that "no [hearing] date [was] set that was provided to [her]" and that, although Boardman represented to the Board that she, Hernandez, was representing Pugh and had agreed to the February 7, 2025, hearing date, she had not in fact agreed to that date. Hernandez further argued that the notice Pugh had received from the Board identified a February 6, 2025, hearing date and that Pugh had not received any subsequent written notice of the rescheduled February 7 hearing date. She told the hearing officer that Pugh had appeared at the Board's office on February 6, but no hearing had been held that day, and that Pugh had not been aware of the February 7 hearing date. As a result, Hernandez concluded, Pugh had been denied her right to due process, including the opportunity to present documentation.

Boardman acknowledged that the correspondence from the superintendent on January 15 and 27, 2025, was directed to Stallworth and stated that he had no notice that Hernandez was handling the SFA matter. He pointed out to the hearing officer that the record reflected two sets of instructions -- one from Pugh and one from Stallworth -- that he was to direct all correspondence to Stallworth and that there was no letter from Stallworth withdrawing from representation or otherwise indicating he was no longer involved. Boardman noted that he had received a letter from Stallworth expressly stating that he represented Pugh but that he had not received any similar notice from Hernandez, although he acknowledged that he had "informal notice" of her involvement.

After addressing the notice issue, the parties proceeded to argue the merits before the hearing officer, disputing whether the exhibits and testimony presented to the Board rendered its decision arbitrary and capricious.

After the review hearing, Pugh filed a response brief asserting that the February 7, 2025, termination decision arbitrarily and capriciously

13

denied her procedural-due-process rights and reiterated the arguments she had made before the hearing officer.

On August 22, 2025, the hearing officer issued a decision reversing the Board's decision to terminate Pugh's employment. In her decision, the hearing officer found that Pugh had been denied her right to procedural due process in connection with the scheduling and conduct of the February 7, 2025, termination hearing. She credited the assertions that neither Hernandez nor Pugh had been informed of the rescheduled termination-hearing date, that Hernandez had advised the Board's counsel of a scheduling conflict due to a criminal jury trial and had requested that the hearing be rescheduled within the statutory timeframe, and that she had received no response to that request. As a result, the hearing officer concluded, the Board heard only from the superintendent's witnesses, which in effect rendered the Board's decision arbitrary and capricious.

In support of that conclusion, the hearing officer offered extensive findings, including her belief that Boardman's contention that Hernandez's correspondence regarding deposition dates in the federal case showing her availability for depositions on February 7, 2025, proved

that Hernandez had been available for the termination hearing on that date was "totally disingenuous." She also found unpersuasive Boardman's argument that Stallworth's prior notice of representation and direction that future correspondence be sent to him justified not communicating with Hernandez about rescheduling. She noted that Boardman knew Hernandez had been retained by Pugh, had communicated with her regarding the termination hearing and the appeal on several occasions, and knew she had requested that the hearing be rescheduled.

Although the hearing officer made "no comment or judgment concerning the merits of the termination case brought against [Pugh]," she found that Pugh had followed the "rules and procedures in requesting a hearing before [the Board] to appeal [the superintendent's decision] to terminate her employment." She also found that Pugh had been entitled to a hearing and had demonstrated every intention of appearing by reporting on the original hearing date, only to be told that no hearing would occur that day and not told that the hearing had been reset for the following day. She further found that Hernandez had remained in contact with Boardman, had informed him that she was unavailable on February

15

6 and 7, 2025, and had requested that the hearing be rescheduled within the time permitted by the SFA. She found that Boardman never responded to that request and proceeded with the hearing on February 7 in the absence of both Pugh and Hernandez.

The hearing officer concluded that those circumstances resulted in a "blatant denial" of Pugh's due-process rights and led to a Board decision that was "arbitrary and capricious." The hearing officer therefore reversed the Board's decision to terminate Pugh's employment and ordered that she be reinstated to her employment in accordance with the SFA. The Board timely appealed the hearing officer's reversal of its decision to terminate Pugh's employment to this court, pursuant to § 16-24C-6(f), Ala. Code 1975, of the SFA.

<u>Analysis</u>

The Board argues that the hearing officer improperly reversed its termination decision, not because the termination itself was unsupported by the evidence or was arbitrary on the merits, but solely on the conclusion that Pugh's procedural-due-process rights were violated. The Board contends that it complied with all procedural requirements under the SFA and provided Pugh with both notice and a meaningful

16

opportunity to be heard. It maintains that Pugh and her attorneys made the voluntary decision not to appear at the February 7, 2025, termination hearing and that their failure to attend cannot later be used to invalidate the proceedings.

The Board further argues that the hearing officer's factual findings were incorrect, particularly the conclusion that Pugh lacked notice of the February 7, 2025, termination hearing when the record reflects repeated communications confirming that date to Stallworth, Pugh's designated counsel. It also contends that disputes regarding which attorney was actively handling the matter are immaterial because Stallworth was the only attorney who formally appeared, expressly directed that all correspondence be sent to him, and never withdrew as counsel. According to the Board, notice to Stallworth was legally sufficient and any internal confusion among counsel does not transform statutory compliance into a due-process violation.

The hearing officer concluded that the Board's decision to proceed with the February 7, 2025, termination hearing was arbitrary and

17

capricious based on an alleged denial of procedural due process.[3] The reversal rested solely on the conclusion that Pugh was denied adequate notice of the February 7, 2025, termination hearing and, as a result, was deprived of a meaningful opportunity to be heard.

The SFA was enacted to ensure "fundamental fairness and due process" while also reducing unnecessary procedural obstacles and delay in personnel adjudications. Ala. Code 1975, § 16-24C-2(1) and (5). Under the SFA, an employee must receive written notice of his or her proposed employment termination, including the reasons for the termination and notice of the right to request a hearing; if a hearing is requested, the employer must set the hearing no fewer than thirty and no more than sixty calendar days after written notice of the hearing date is issued; and, after the hearing, the employee must receive written notice of the final decision and notice of the right to appeal. § 16-24C-6(b)-(d). The SFA also provides that the employee may be represented by counsel and that "[t]he

---

[3]We note that the hearing officer applied the wrong standard in determining that Pugh's due-process rights had been denied. The arbitrary-and-capricious standard under the SFA applies to the employer's ultimate personnel decision, not to procedural matters relating to the termination process. <u>Calhoun Cmty. Coll. v. Hudson</u>, 200 So. 3d 1175, 1178-79 (Ala. Civ. App. 2015).

employee or his or her representative" shall be afforded the opportunity to present testimony, evidence, argument, and cross-examination. § 16-24C-6(c).

Pugh has not shown that the Board failed to comply with the statutory requirements of the SFA. It is undisputed that the superintendent issued written notice recommending termination of Pugh's employment and advising her of her right to request a hearing. It is further undisputed that Pugh timely requested a hearing and that the Board issued written notice setting the hearing for February 6, 2025, advising her of her procedural rights under the SFA, including the right to counsel, and establishing prehearing deadlines. It is also undisputed that Pugh later received written notice of the termination decision and her right to appeal. The issue we must decide is whether notice of the continued February 7, 2025, hearing date was constitutionally sufficient given that notice was provided to Stallworth.

Pugh did not contend below, and does not contend here, that the Board violated § 16-24C-6(k), which pertains to how notice is to be provided under the SFA. Section 16-24C-6(k) provides that, "[u]nless otherwise provided, notice for all purposes under [the SFA]" must be

19

given by certified mail, private mail carrier, or physical delivery to the employee or the employee's last known address. As previously noted, when Pugh notified the Board that she was contesting her proposed termination, she indicated that her attorneys would be noticing their appearance and that all further correspondence should be directed to them. By a letter dated January 3, 2025, and apparently sent by certified mail, the Board provided notice to Pugh of the original hearing date of February 6, 2025. Thereafter, Stallworth gave notice of his appearance for Pugh and directed that all further communication regarding the termination matter be directed to him. Thus, when the Board provided correspondence on January 15, 2025, that the hearing had been rescheduled from February 6 to February 7, 2025, at Stallworth's request, it did so in the manner instructed by both Stallworth and Pugh -- by sending notice to Stallworth. Pugh did not argue below, and does not argue here, that the manner of providing that correspondence violated § 16-24C-6(k), but, even if she had, and even if we were to conclude that that subsection applied to that correspondence, by directing that communications be directed to her counsel and thereafter having Stallworth appear on her behalf and direct that all

20

correspondence be directed to him, Pugh waived any claim that the Board was obligated under § 16-24C-6(k) to direct that correspondence to her. Cf. Alabama State Tenure Comm'n v. Goldsby, 627 So. 2d 434, 436 (Ala. Civ. App. 1993) (under the former Alabama Teacher Tenure Act, § 16-24-1 et seq., Ala. Code 1975, teacher waived any claim of defective notice).

Due process requires "'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Taylor v. Huntsville City Bd. of Educ., 143 So. 3d 219, 228 (Ala. Civ. App. 2013) (quoting Mullane v. Central Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950)). "'The notice must be of such nature as reasonably to convey the required information,'" id. (quoting Mullane, 339 U.S. at 314), and "'[t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it,'" id. (quoting Mullane, 339 U.S. at 315) (emphasis omitted). Due process does not require that a party actually receive the notice but only that the method employed was reasonably calculated to provide it. McDonald v. Keahey, 301 So. 3d 823, 838 n.18 (Ala. Civ. App. 2019). Accordingly, the question is whether the Board's method of notice to Stallworth was reasonably calculated, under

21

the circumstances, to apprise Pugh of the hearing and afford her an opportunity to respond. We conclude that it was.

The SFA expressly permits representation by counsel and contemplates that an employee may proceed through a representative. See § 16-24C-6(c). While the Alabama Rules of Civil Procedure are not binding in this context, see Rule 81(b), Ala. R. Civ. P.; Berryman v. Civil Serv. Bd. of Muscle Shoals, 571 So. 2d 1122, 1124 (Ala. Civ. App. 1990), they provide guidance reflecting the general framework Alabama courts use in evaluating whether notice to counsel satisfies due-process requirements for represented parties. Rule 5(b), Ala. R. Civ. P., provides that "[w]henever … service is required or permitted to be made upon a party represented by an attorney, the service shall be made upon the attorney unless service upon the party is ordered by the court."

Consistent with that framework, the Alabama Supreme Court has held that " '[k]nowledge of the attorney will be imputed to the client if the knowledge comes to the attorney while engaged in a service for the client after the attorney-client relationship has commenced.' " Ex parte Utilities Bd. of Roanoke, 348 So. 3d 1098, 1103 (Ala. 2021) (quoting Sanders v. Flournoy, 640 So. 2d 933, 939 (Ala. 1994)). Indeed, it has specifically held

that "notice of a hearing that is provided to an attorney constitutes notice to the attorney's client." Id. (citing Shirley v. McDonald, 220 Ala. 50, 53, 124 So. 104, 106 (1929) (holding that counsel's knowledge of a trial date "must be imputed" to the client as a matter of law)). Likewise, our appellate courts have recognized that service on a party's "attorney of record,"[4] rather than directly on the party, satisfies due-process requirements absent an explicit order authorizing an alternate method. Stribling Equip., Inc. v. Crager, 891 So. 2d 299, 304 (Ala. 2004) (finding no due-process violation when notice was served on counsel rather than directly on the party because service complied with the Alabama Rules of Civil Procedure); see also Calhoun v. Calhoun, 46 Ala. App. 381, 386, 243 So. 2d 37, 42 (Civ. App. 1970). Furthermore, notice to one attorney is sufficient to give notice to both attorneys when the record reflects their "co-counsel" status. Thomas v. Kellett, 489 So. 2d 554, 555 (Ala. 1986).

Here, Pugh informed the Board that her attorneys would be notifying it of their appearances and requested that future

---

[4]An "attorney of record" is an attorney who has filed an appearance or pleading in the action and is therefore presumed to have authority to bind the client, including by accepting service on the client's behalf. Maner v. Maner, 279 Ala. 652, 658, 189 So. 2d 336, 342 (1966).

correspondence be directed to her counsel. Thereafter, Stallworth sent written correspondence advising that he represented Pugh in connection with the proposed termination matter and expressly instructed that "[a]ll correspondence regarding [that] matter should be directed to [him]." No other attorney filed a formal notice of appearance or directed that communications be handled differently, and Stallworth never filed a notice of withdrawal. Therefore, the Board could have reasonably believed that Stallworth was Pugh's attorney of record for purposes of the termination matter and that notice provided to Stallworth of the hearing was imputed to Pugh. See Ex parte Utilities Bd., 348 So. 3d at 1103; Maner v. Maner, 279 Ala. 652, 658, 189 So. 2d 336, 342 (1966). Cf. Ex parte Hill, 225 So. 3d 56, 65 (Ala. 2016) (quoting State Farm Mut. Auto. Ins. Co. v. Humphres, 293 Ala. 413, 418, 304 So. 2d 573, 577 (1974)) ("'[A] party may not avail himself of error, if any, into which he has led the court.'"). Accordingly, we cannot conclude that the Board's notice to Stallworth, as Pugh's attorney of record, was inconsistent with due process or that it was not reasonably calculated to apprise Pugh of the hearing and afford her an opportunity to respond.

The record also does not support the conclusion that Pugh and her attorneys were unaware that the hearing would proceed on February 7, 2025. The superintendent sent a letter on January 15, 2025, to Stallworth indicating that the hearing before the Board would be held on February 7. Boardman sent his exhibit list, witness list, and subpoena information to both Hernandez and Stallworth, and, on February 3, 2025, in response to Hernandez, specifically confirmed that the termination hearing would proceed on February 7. The record reflects that Pugh did not file a motion to continue the hearing. When neither Pugh nor her attorneys appeared at the termination hearing, the Board had no duty to continue the matter or to separately contact them again. Cf. D. & J. Min. & Mining, Inc. v. Wilson, 456 So. 2d 1099, 1100-01 (Ala. Civ. App. 1984) (noting that a party, "usually through an attorney," is responsible for keeping track of his or her case and that "the court owes no duty to notify a party of the setting of a case or to continue a case because of the absence of a party or other engagements of his attorney").

Likewise, Hernandez's assertion that she was unavailable on February 6 and 7, 2025, does not establish a due-process violation. Under § 16-24C-6(b), the hearing is set "by the employer," i.e., the Board, and

25

may be rescheduled only "by agreement or for good cause shown." The Board originally set the hearing for February 6 and continued it to February 7, a date already contemplated during scheduling, based on an agreement with Stallworth. The statute did not require Hernandez's consent to set the hearing date. It is clear that there was no agreement to further modify the date, because Boardman advised Hernandez that the hearing would remain scheduled for February 7 and that he could not unilaterally change it. The record reflects no communications with Hernandez after February 3. Further, nothing in the record establishes that Stallworth -- the attorney the Board reasonably understood to be representing Pugh -- was unavailable or that any of Pugh's attorneys filed a motion with the Board seeking a continuance of the hearing for good cause. Although there is some indication that Pugh terminated Stallworth's services at some point during the termination proceedings, the record does not indicate when that occurred, and nothing in the record indicates that the Board was ever informed that Stallworth no longer represented Pugh.

Due process requires notice and an opportunity to respond, not guaranteed attendance or actual participation. "'"[T]he essential

requirements of due process ... are notice and an opportunity to respond."'" <u>Huntsville City Bd. of Educ. v. Jacobs</u>, 194 So. 3d 929, 942 (Ala. Civ. App. 2014) (quoting <u>Frizzell v. Autauga Cnty. Bd. of Educ.</u>, 972 F. Supp. 564, 565 (M.D. Ala. 1997), quoting in turn <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 546 (1985)). In the school-employment context, "[t]he essential elements of due process are not that the teacher must personally appear, nor that teacher's counsel must examine or cross-examine witnesses, but that the teacher be afforded opportunity to do these things." <u>Alabama State Tenure Comm'n v. Board of Sch. Comm'rs of Mobile Cnty.</u>, 332 So. 2d 724, 730 (Ala. Civ. App. 1976).

That is exactly what occurred here. As discussed above, Pugh had notice of the hearing date through Stallworth, the sole attorney who notified the Board of his appearance and who remained Pugh's counsel of record. Pugh had the opportunity to appear, present evidence, cross-examine witnesses, and contest the recommendation. The Board held the hearing in compliance with the SFA, and, as the Board's advisory counsel correctly noted, nothing in the SFA conditions the validity of that hearing on the employee's attendance. Pugh's failure to appear -- and her

27

attorneys' failure to appear -- does not transform adequate notice into a due-process violation.

Ultimately, the hearing officer's conclusion rested not on any failure by the Board to provide notice, but on dissatisfaction with how Pugh's attorneys managed the representation and communicated with each other and with Pugh. Due process does not require the Board to resolve internal communication failures among counsel or to investigate private attorney-client disputes before proceeding with a statutorily required hearing. The Board acted consistently with Pugh's own instructions, with Stallworth's written directive, and with the procedural requirements of the SFA. Because the Board provided Pugh with constitutionally sufficient notice and a meaningful opportunity to be heard, the hearing officer erred in reversing the termination decision on procedural-due-process grounds. The Board's decision is therefore due to be reinstated.

## Conclusion

Having concluded that the hearing officer erred in reversing the Board's decision to terminate Pugh's employment on the ground that the Board violated Pugh's procedural-due-process rights, we reverse the

hearing officer's order and remand the case to the hearing office to enter an order affirming the Board's decision.

REVERSED AND REMANDED.

Moore, P.J., and Edwards, Hanson, and Bowden, JJ., concur.